# EXHIBIT A

**UNITED STATES INTERNATIONAL TRADE COMMISSION**
**WASHINGTON, D.C.**

| | |
|---|---|
| **In the Matter of:**<br><br>**CERTAIN LOCATION-SHARING SYSTEMS, RELATED SOFTWARE, COMPONENTS THEREOF, AND PRODUCTS CONTAINING SAME** | **Investigation No. 337-TA-\_\_\_\_** |

**VERIFIED COMPLAINT UNDER SECTION 337**
**OF THE TARIFF ACT OF 1930, AS AMENDED**

| **Complainants:** | **Proposed Respondents:** |
|---|---|
| Advanced Ground Information Systems, Inc.<br>92 Lighthouse Dr.<br>Jupiter, FL 33469<br>Telephone: (561) 744-3213 | Google LLC<br>1600 Amphitheatre Parkway<br>Mountain View, CA 94043<br>Telephone: (650) 253-0000 |
| AGIS Software Development LLC<br>100 West Houston Street<br>Marshall, TX 75671<br>Telephone: (903) 702-1954 | Samsung Electronics, Co., Ltd.<br>12 Samsung-Ro<br>Maetan-3dong, Yeongtong-gu<br>Suwon, 443-742, South Korea<br>Telephone: (822) 225-0114 |
| **Counsel for Complainant:** | Samsung Electronics America, Inc.<br>85 Challenger Rd.<br>Ridgefield Park, New Jersey 07660<br>Telephone: (201) 229-4000 |
| Evan H. Langdon<br>**FABRICANT LLP**<br>1101 Pennsylvania Avenue, Suite 300,<br>Washington, DC 20004<br>Telephone: (646) 797-4277<br>E-mail: Agis_ITC@fabricantllp.com | |
| | OnePlus Technology (Shenzhen) Co., Ltd.<br>18F, Tairan Building, Block C<br>Tairan 8th Road<br>Chgongmiao, Futian District<br>Shenzhen, Guangdong 518040, China |
| Alfred R. Fabricant<br>Peter Lambrianakos<br>Vincent J. Rubino, III<br>Enrique W. Iturralde<br>Justine Minseon Park<br>**FABRICANT LLP**<br>411 Theodore Fremd Avenue, Suite 206<br>South Rye, New York 10580<br>Telephone: (646) 797-4277<br>E-mail: Agis_ITC@fabricantllp.com | TCL Technology Group Corporation<br>22/F, TCL Technology Building, No. 17<br>Huifeng 3rd Road<br>Zhongkai High-Tech Development District<br>Huizhou, Guangdong, China 516006<br><br>TCL Electronics Holdings Limited<br>7th Floor, Building 22E |

Matthew D. Aichele
**RUSS AUGUST & KABAT**
800 Maine Ave. SW, Suite 200
Washington, DC 20024
Telephone: (202) 664-0623
E-mail: maichele@raklaw.com

22 Science Park East Avenue
Hong Kong Science Park
Hong Kong

TCL Communication Technology Holdings
Limited
5/F, Building 22E,
22 Science Park East Avenue
Hong Kong Science Park, Shatin,
New Territories, Hong Kong

TCT Mobile (US) Inc.
25 Edelman, Suite 200
Irvine, CA 92618
Telephone: (949) 892-2990

Lenovo Group Ltd.
6 Chuang ye Road, Haidian District
Beijing 100085, China
Telephone: (852) 2590-0228

Lenovo (United States) Inc.
1009 Think Place, Building One
Morrisville, NC 27560
Telephone: (855) 253-6686

Motorola Mobility LLC
222 W Merchandise Mart Plaza, Suite 1800
Chicago, IL 60654
Telephone: (800) 668-6765

HMD Global
Karaportti 2, FIN-02610
Espoo, Finland

HMD Global OY
Bertel Jungin aukio 9, 02600
Espoo, Finland

HMD America, Inc.
1200 Brickell Ave., Suite 510
Miami, FL 33131

Sony Corporation
1-7-1 Konan Minato-ku
Tokyo, 108-0075, Japan

Telephone: 81-3-6748-2111

Sony Mobile Communications, Inc.
4-12-3 Higashi-Shinagawa, Shinagawa-ku
Tokyo, 140-0002, Japan
Telephone: (855) 806-8464

ASUSTek Computer Inc.
No. 15, Li-Te Rd.
Beitou Dist., Taipei 112, Taiwan
Telephone: (866) 2-2894-3447

ASUS Computer International
48720 Kato Rd.
Fremont, CA 94538
Telephone: (510) 739-3777

Caterpillar Inc.
100 NE Adams St.
Peoria, IL 61629
Telephone: (309) 675-2337

BLU Products
10814 NW 33rd Street
Doral, FL 33172
Telephone: (877) 639-6393

Panasonic Corporation
1006 Oaza Kadoma-shi
Kadoma 571-8501
Osaka, Japan
Phone: +81-6-6908-1121
Fax: +81-6-6908-2351

Panasonic Corporation of North America
1 Panasonic Way
Secaucus, New Jersey 07094
Phone: (201) 348-7000
Fax: (201) 348-7016

Kyocera Corporation
6 Takeda Tobadono-cho, Fushmi-ku
Kyoto, Japan 612-8501

Xiaomi Corporation
Maples Corporate Services Limited

3

P.O. Box 309
Ugland House
Grand Cayman, KY1-1104, Cayman Islands

68 Qinghe Middle Street
Haidian District
Beijing, China 100085

Xiaomi H.K. Ltd.
Unit 806, Tower 2 8/F
Cheung Sha Wan Plaza
833 Cheung Sha Wan Road
Kowloon City, Hong Kong

Xiaomi Communications Co., Ltd.
Xiaomi Office Building
68 Qinghe Middle Street
Haidian District
Beijing, China 100085

Xiaomi Inc.
Xiaomi Office Building
68 Qinghe Middle Street
Haidian District
Beijing, China 100085

## <u>TABLE OF CONTENTS</u>

<u>Page(s)</u>

I.    INTRODUCTION ................................................................................. 16

II.   THE PARTIES..................................................................................... 18

    A.    The Complainant........................................................................ 18

    B.    The Proposed Respondents ........................................................ 20

        1.    Google LLC .................................................................... 20

        2.    Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. ................................................................................. 21

        3.    OnePlus Technology (Shenzhen) Co., Ltd. .................................. 22

        4.    TCL Technology Group Corporation, TCL Communication Technology Holdings Limited, TCL Electronics Holdings Limited, and TCT Mobile (US) Inc. ................................................................ 22

        5.    Lenovo Group Ltd., Lenovo (United States) Inc., and Motorola Mobility LLC ................................................................... 25

        6.    HMD Global, HMD Global OY, and HMD America, Inc. ..................... 26

        7.    Sony Corporation and Sony Mobile Communications, Inc. .................... 27

        8.    ASUSTek Computer Inc. and ASUS Computer International................. 27

        9.    Caterpillar Inc. ................................................................. 28

        10.    BLU Products, Inc. ........................................................... 29

        11.    Panasonic Corporation and Panasonic Corporation of North America................................................................................. 29

        12.    Kyocera Corporation......................................................... 30

        13.    Xiaomi Corporation, Xiaomi Communications Co., Ltd., Xiaomi H.K. Ltd., and Xiaomi Inc. ................................................. 30

III.   THE TECHNOLOGY AND PRODUCTS AT ISSUE ................................... 32

IV.    THE ASSERTED AGIS PATENTS ................................................................. 33

    A.    The '970 Patent ................................................................................. 33

        1.    Identification of the Patent and Ownership ............................ 33

        2.    Nontechnical Description of the Patent .................................. 33

        3.    Foreign Counterparts of the Patent ........................................ 34

        4.    Licensees ................................................................................. 34

    B.    The '838 Patent ................................................................................. 35

        1.    Identification of the Patent and Ownership ............................ 35

        2.    Nontechnical Description of the Patent .................................. 35

        3.    Foreign Counterparts of the Patent ........................................ 36

        4.    Licensees ................................................................................. 37

    C.    The '251 Patent ................................................................................. 37

        1.    Identification of the Patent and Ownership ............................ 37

        2.    Nontechnical Description of the Patent .................................. 38

        3.    Foreign Counterparts of the Patent ........................................ 38

        4.    Licensees ................................................................................. 38

    D.    The '829 Patent ................................................................................. 38

        1.    Identification of the Patent and Ownership ............................ 38

        2.    Nontechnical Description of the Patent .................................. 39

        3.    Foreign Counterparts of the Patent ........................................ 40

        4.    Licensees ................................................................................. 40

    E.    The '123 Patent ................................................................................. 40

V.    SPECIFIC INSTANCES OF IMPORTATION AND SALE ........................... 41

    A.    Google ............................................................................................... 42

    B.    Samsung Respondents ...................................................................... 42

C.     OnePlus .................................................................................................. 43

D.     TCL Respondents ................................................................................... 43

E.     Lenovo Respondents .............................................................................. 44

F.     HMD Respondents .................................................................................. 44

G.     Sony Respondents ................................................................................... 45

H.     ASUS Respondents ................................................................................. 45

I.     Caterpillar ............................................................................................... 46

J.     BLU .......................................................................................................... 46

K.     Panasonic ................................................................................................ 47

L.     Kyocera ................................................................................................... 47

M.     Xiaomi ..................................................................................................... 48

VI.     UNLAWFUL AND UNFAIR ACTS OF THE PROPOSED RESPONDENTS ............. 48

A.     Google ..................................................................................................... 51

B.     Samsung Respondents ............................................................................ 53

C.     OnePlus .................................................................................................. 56

D.     TCL .......................................................................................................... 58

E.     Lenovo ..................................................................................................... 60

F.     HMD ........................................................................................................ 62

G.     Sony ......................................................................................................... 64

H.     ASUS ....................................................................................................... 66

I.     Caterpillar ............................................................................................... 68

J.     BLU .......................................................................................................... 70

K.     Panasonic ................................................................................................ 72

L.     Kyocera ................................................................................................... 74

M.     Xiaomi ..................................................................................................... 76

VII.    CLASSIFICATION OF THE ACCUSED PRODUCTS UNDER THE
        HARMONIZED TARIFF SCHEDULE ........................................................................ 77

VIII.   RELATED LITIGATION ............................................................................................ 78

IX.     THE DOMESTIC INDUSTRY .................................................................................... 81

        A.      Technical Prong .............................................................................................. 81

        B.      Economic Prong.............................................................................................. 82

X.      RELIEF REQUESTED................................................................................................. 83

## EXHIBIT & APPENDIX LIST

| Non-Confidential Exhibits | |
| --- | --- |
| **Ex. No.** | **Description** |
| 1 | Copy of U.S. Patent No. 8,213,970 |
| 2 | Copy of U.S. Patent No. 9,467,838 |
| 3 | Copy of U.S. Patent No. 9,445,251 |
| 4 | Copy of U.S. Patent No. 9,749,829 |
| 5 | Copy of U.S. Patent No. 9,820,123 |
| 6 | Representative Claim Chart Comparing Google Pixel 6 to the '970 Patent |
| 7 | Representative Claim Chart Comparing Google Pixel 6 to the '838 Patent |
| 8 | Representative Claim Chart Comparing Google Pixel 6 to the '251 Patent |
| 9 | Representative Claim Chart Comparing Google Pixel 6 to the '829 Patent |
| 10 | Representative Claim Chart Comparing Google Pixel 6 to the '123 Patent |
| 11 | Representative Claim Chart Comparing Samsung Galaxy S22+ to the '970 Patent |
| 12 | Representative Claim Chart Comparing Samsung Galaxy S22+ to the'838 Patent |
| 13 | Representative Claim Chart Comparing Samsung Galaxy S22+ to the '251 Patent |
| 14 | Representative Claim Chart Comparing Samsung Galaxy S22+ to the '829 Patent |
| 15 | Representative Claim Chart Comparing Samsung Galaxy S22+ to the '123 Patent |
| 16 | Representative Claim Chart Comparing OnePlus 8T to the '970 Patent |
| 17 | Representative Claim Chart Comparing OnePlus 8T to the '838 Patent |
| 18 | Representative Claim Chart Comparing OnePlus 8T to the '251 Patent |
| 19 | Representative Claim Chart Comparing OnePlus 8T to the '829 Patent |
| 20 | Representative Claim Chart Comparing OnePlus 8T to the '123 Patent |
| 21 | Representative Claim Chart Comparing TCL 10L to the '970 Patent |
| 22 | Representative Claim Chart Comparing TCL 10L to the '838 Patent |
| 23 | Representative Claim Chart Comparing TCL 10L to the '251 Patent |
| 24 | Representative Claim Chart Comparing TCL 10L to the '829 Patent |
| 25 | Representative Claim Chart Comparing TCL 10L to the '123 Patent |

| Non-Confidential Exhibits | |
|---|---|
| Ex. No. | Description |
| 26 | Representative Claim Chart Comparing Lenovo Motorola Edge (2021) to the '970 Patent |
| 27 | Representative Claim Chart Comparing Lenovo Motorola Edge (2021) to the '838 Patent |
| 28 | Representative Claim Chart Comparing Lenovo Motorola Edge (2021) to the '251 Patent |
| 29 | Representative Claim Chart Comparing Lenovo Motorola Edge (2021) to the '829 Patent |
| 30 | Representative Claim Chart Comparing Lenovo Motorola Edge (2021) to the '123 Patent |
| 31 | Representative Claim Chart Comparing HMD Nokia G50 to the '970 Patent |
| 32 | Representative Claim Chart Comparing HMD Nokia G50 to the '838 Patent |
| 33 | Representative Claim Chart Comparing HMD Nokia G50 to the '251 Patent |
| 34 | Representative Claim Chart Comparing HMD Nokia G50 to the '829 Patent |
| 35 | Representative Claim Chart Comparing HMD Nokia G50 to the '123 Patent |
| 36 | Representative Claim Chart Comparing Sony Xperia 5 III to the '970 Patent |
| 37 | Representative Claim Chart Comparing Sony Xperia 5 III to the '838 Patent |
| 38 | Representative Claim Chart Comparing Sony Xperia 5 III to the '251 Patent |
| 39 | Representative Claim Chart Comparing Sony Xperia 5 III to the '829 Patent |
| 40 | Representative Claim Chart Comparing Sony Xperia 5 III to the '123 Patent |
| 41 | Representative Claim Chart Comparing ASUS ZenFone 8 to the '970 Patent |
| 42 | Representative Claim Chart Comparing ASUS ZenFone 8 to the '838 Patent |
| 43 | Representative Claim Chart Comparing ASUS ZenFone 8 to the '251 Patent |
| 44 | Representative Claim Chart Comparing ASUS ZenFone 8 to the '829 Patent |
| 45 | Representative Claim Chart Comparing ASUS ZenFone 8 to the '123 Patent |
| 46 | Representative Claim Chart Comparing Caterpillar S62 Pro to the '970 Patent |
| 47 | Representative Claim Chart Comparing Caterpillar S62 Pro to the '838 Patent |
| 48 | Representative Claim Chart Comparing Caterpillar S62 Pro to the '251 Patent |
| 49 | Representative Claim Chart Comparing Caterpillar S62 Pro to the '829 Patent |
| 50 | Representative Claim Chart Comparing Caterpillar S62 Pro to the '123 Patent |
| 51 | Representative Claim Chart Comparing BLU Bold N2 to the '970 Patent |

| Non-Confidential Exhibits | |
| --- | --- |
| Ex. No. | Description |
| 52 | Representative Claim Chart Comparing BLU Bold N2 to the '838 Patent |
| 53 | Representative Claim Chart Comparing BLU Bold N2 to the '251 Patent |
| 54 | Representative Claim Chart Comparing BLU Bold N2 to the '829 Patent |
| 55 | Representative Claim Chart Comparing BLU Bold N2 to the '123 Patent |
| 56 | Representative Claim Chart Comparing Panasonic Toughbook FZ-N1 to the '970 Patent |
| 57 | Representative Claim Chart Comparing Panasonic Toughbook FZ-N1 to the '838 Patent |
| 58 | Representative Claim Chart Comparing Panasonic Toughbook FZ-N1 to the '251 Patent |
| 59 | Representative Claim Chart Comparing Panasonic Toughbook FZ-N1 to the '829 Patent |
| 60 | Representative Claim Chart Comparing Panasonic Toughbook FZ-N1 to the '123 Patent |
| 61 | Representative Claim Chart Comparing Kyocera Durasport Pro to the '970 Patent |
| 62 | Representative Claim Chart Comparing Kyocera Durasport Pro to the '838 Patent |
| 63 | Representative Claim Chart Comparing Kyocera Durasport Pro to the '251 Patent |
| 64 | Representative Claim Chart Comparing Kyocera Durasport Pro to the '829 Patent |
| 65 | Representative Claim Chart Comparing Kyocera Durasport Pro to the '123 Patent |
| 66 | Representative Claim Chart Comparing Xiaomi 11T to the '970 Patent |
| 67 | Representative Claim Chart Comparing Xiaomi 11T to the '838 Patent |
| 68 | Representative Claim Chart Comparing Xiaomi 11T to the '251 Patent |
| 69 | Representative Claim Chart Comparing Xiaomi 11T to the '829 Patent |
| 70 | Representative Claim Chart Comparing Xiaomi 11T to the '123 Patent |
| 71 | Certified Copy of the Assignment Documents for the '970 Patent |
| 72 | Certified Copy of the Assignment Documents for the '838 Patent |
| 73 | Certified Copy of the Assignment Documents for the '251 Patent |
| 74 | Certified Copy of the Assignment Documents for the '829 Patent |

| Non-Confidential Exhibits | |
|---|---|
| **Ex. No.** | **Description** |
| 75 | Certified Copy of the Assignment Documents for the '123 Patent |
| 76 | Receipts for Representative Google Pixel 6 device |
| 77 | Photograph of Representative Google Pixel 6 device |
| 78 | Photograph of Representative Google Pixel 6 device |
| 79 | Photograph of Representative Google Pixel 6 device |
| 80 | Receipt for Representative Samsung Galaxy S22+ device |
| 81 | Photograph of Representative Samsung Galaxy S22+ device |
| 82 | Photograph of Representative Samsung Galaxy S22+ device |
| 83 | Receipt for Representative OnePlus 8T device |
| 84 | Photograph of Representative OnePlus 8T device |
| 85 | Photograph of Representative OnePlus 8T device |
| 86 | Photograph of Representative OnePlus 8T device |
| 87 | Photograph of Representative OnePlus 8T device |
| 88 | Receipt for Representative TCL 10L device |
| 89 | Receipt for Representative TCL 10L device |
| 90 | Photograph of Representative TCL 10L device |
| 91 | Photograph of Representative TCL 10L device |
| 92 | Photograph of Representative TCL 10L device |
| 93 | Photograph of Representative TCL 10L device |
| 94 | Photograph of Representative TCL 10L device |
| 95 | Receipt for Representative Lenovo Motorola Edge (2021) device |
| 96 | Photograph of Representative Lenovo Motorola Edge (2021) device |
| 97 | Photograph of Representative Lenovo Motorola Edge (2021) device |
| 98 | Photograph of Representative Lenovo Motorola Edge (2021) device |
| 99 | Photograph of Representative Lenovo Motorola Edge (2021) device |
| 100 | Photograph of Representative Lenovo Motorola Edge (2021) device |
| 101 | Receipt for Representative HMD G50 device |
| 102 | Photograph of Representative HMD G50 device |
| 103 | Photograph of Representative HMD G50 device |

| Non-Confidential Exhibits | |
|---|---|
| Ex. No. | Description |
| 104 | Photograph of Representative HMD G50 device |
| 105 | Receipts for Representative Sony Xperia 5 III device |
| 106 | Photograph of Representative Sony Xperia 5 III device |
| 107 | Photograph of Representative Sony Xperia 5 III device |
| 108 | Photograph of Representative Sony Xperia 5 III device |
| 109 | Photograph of Representative Sony Xperia 5 III device |
| 110 | Receipt for Representative ASUS ZenFone 8 device |
| 111 | Photograph of Representative ASUS ZenFone 8 device |
| 112 | Photograph of Representative ASUS ZenFone 8 device |
| 113 | Photograph of Representative ASUS ZenFone 8 device |
| 114 | Receipt for Representative Caterpillar S62 Pro device |
| 115 | Photograph of Representative Caterpillar S62 Pro device |
| 116 | Photograph of Representative Caterpillar S62 Pro device |
| 117 | Photograph of Representative Caterpillar S62 Pro device |
| 118 | Photograph of Representative Caterpillar S62 Pro device |
| 119 | Receipt for Representative BLU Bold N2 device |
| 120 | Photograph of Representative BLU Bold N2 device |
| 121 | Photograph of Representative BLU Bold N2 device |
| 122 | Receipt for Representative Panasonic Toughbook FZ-N1 device |
| 123 | Photograph of Representative Panasonic Toughbook FZ-N1 device |
| 124 | Photograph of Representative Panasonic Toughbook FZ-N1 device |
| 125 | Photograph of Representative Panasonic Toughbook FZ-N1 device |
| 126 | Photograph of Representative Panasonic Toughbook FZ-N1 device |
| 127 | Photograph of Representative Panasonic Toughbook FZ-N1 device |
| 128 | Photograph of Representative Panasonic Toughbook FZ-N1 device |
| 129 | Photograph of Representative Panasonic Toughbook FZ-N1 device |
| 130 | Receipt for Representative Kyocera DuraSport 5G device |
| 131 | Photograph of Representative Kyocera DuraSport 5G device |
| 132 | Photograph of Representative Kyocera DuraSport 5G device |

| Non-Confidential Exhibits | |
|---|---|
| **Ex. No.** | **Description** |
| 133 | Receipt for Representative Xiaomi 11T device |
| 134 | Photograph of Representative Xiaomi 11T device |
| 135 | Photograph of Representative Xiaomi 11T device |

| Confidential Exhibits | |
|---|---|
| **Ex. No.** | **Description** |
| 136C | List of AGIS Software Licensees |
| 137C | Exemplary Claim Chart Comparing the '970 Patent to AGIS, Inc. LifeRing Products |
| 138C | Exemplary Claim Chart Comparing the '838 Patent to AGIS, Inc. LifeRing Products |
| 139C | Exemplary Claim Chart Comparing the '251 Patent to AGIS, Inc. LifeRing Products |
| 140C | Exemplary Claim Chart Comparing the '829 Patent to AGIS, Inc. LifeRing Products |
| 141C | Exemplary Claim Chart Comparing the '123 Patent to AGIS, Inc. LifeRing Products |
| 142C | Agreement between AGIS, Inc. and AGIS Holdings, Inc. |
| 143C | Agreement between AGIS Holdings, Inc. and AGIS Software Development LLC |
| 144C | Declaration of Malcolm K. Beyer, Jr. in Support of the Complaint |

| Appendices | |
|---|---|
| **Appx. No.** | **Description** |
| A1 | U.S. Patent No. 8,213,970 Prosecution History |
| A2 | U.S. Patent No. 8,213,970 Technical References Cited in Prosecution History |
| B1 | U.S. Patent No. 9,467,838 Prosecution History |
| B2 | U.S. Patent No. 9,467,838 Technical References Cited in Prosecution History |
| C1 | U.S. Patent No. 9,445,251 Prosecution History |
| C2 | U.S. Patent No. 9,445,251 Technical References Cited in Prosecution History |
| D1 | U.S. Patent No. 9,749,829 Prosecution History |

| Appendices | |
|---|---|
| **Appx. No.** | **Description** |
| D2 | U.S. Patent No. 9,749,829 Technical References Cited in Prosecution History |
| E1 | U.S. Patent No. 9,820,123 Prosecution History |
| E2 | U.S. Patent No. 9,820,123 Technical References Cited in Prosecution History |

## I.     INTRODUCTION

1.     This Complaint is filed by AGIS Software Development LLC ("AGIS Software") and Advanced Ground Information Systems, Inc. ("AGIS, Inc.") (collectively, "AGIS" or "Complainants"), pursuant to Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337 ("Section 337"), based on the unlawful offer for sale for importation into the United States, sale for importation into the United States, importation into the United States, and/or sale within the United States after importation of certain location-sharing systems, related software, components thereof, and products containing same ("Accused Products") by proposed Respondents: Google LLC, Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., OnePlus Technology (Shenzhen) Co., Ltd., TCL Technology Group Corporation, TCL Communication Technology Holdings Limited, TCL Electronics Holdings Limited, TCT Mobile (US), Inc., Lenovo Group Ltd., Lenovo (United States) Inc., Motorola Mobility LLC, HMD Global, HMD Global OY, HMD America, Inc., Sony Corporation, Sony Mobile Communications, Inc., ASUSTek Computer Inc., ASUS Computer International, Caterpillar Inc., BLU Products, Inc., Panasonic Corporation, Panasonic Corporation of America, Kyocera Corporation, Xiaomi Corporation, Xiaomi H.K. Ltd., Xiaomi Communications Co., Ltd., and Xiaomi Inc. (the "Proposed Respondents").

2.     Proposed Respondents' Accused Products infringe one or more claims of U.S. Patent Nos. 8,213,970 ("the '970 Patent, attached as **Ex. 1**); 9,467,838 ("the '838 patent," attached as **Ex. 2**); 9,445,251 ("the '251 patent," attached as **Ex. 3**); 9,749,829 ("the '829 patent," attached as **Ex. 4**); and 9,820,123 ("the '123 patent," attached as **Ex. 5**) (collectively, "the Asserted AGIS Patents"), in violation of Section 337(a)(1)(B).

3.     The Accused Products infringe at least the following claims of the Asserted AGIS Patents in violation of Section 337(a)(1)(B)(i) and 35 U.S.C. §§ 271(a)-(c), either literally or under the doctrine of equivalents:

| Asserted Patent | Asserted Independent Claims | Asserted Dependent Claims |
|---|---|---|
| '970 Patent | 2, 10 | 11-13 |
| '838 Patent | 1, 54, 55, 84 | 3, 5-10, 16, 19, 25, 38, 40, 56, 61-64, 68, 71, 72, 80 |
| '251 Patent | 1, 24 | 2, 5, 7, 8, 23, 25, 28-31, 35 |
| '829 Patent | 1, 34, 35, 68 | 8, 41 |
| '123 Patent | 14, 36 | 37, 38 |

4.      As required by Sections 337(a)(1)(A) and (2)-(3), an industry exists or is in the process of being established in the United States relating to Complainants' LifeRing products and the Asserted AGIS Patents, which are practiced by Complainants' LifeRing products ("LifeRing DI Products").  Complainants' LifeRing DI Products sold domestically are designed, developed, engineered, tested, assembled, and supported in the United States.  To design, develop, engineer, test, assemble, and support Complainants' LifeRing DI Products, Complainants have made and continue to make significant investment in plant and equipment, has employed and continues to employ significant labor or capital, and has made and continues to make substantial investments in the exploitation in the Asserted AGIS Patents in the United States.  Complainants' current and future significant domestic investment in plant and equipment and significant domestic employment of labor or capital demonstrates that Complainants are growing the domestic industry for its LifeRing DI Products.

5.      Complainants seek an LEO barring from entry the Accused Products imported, sold for importation, or sold within the United States after importation by the Proposed Respondents in violation of Section 337.

6.      Complainants also seek, as relief, permanent cease and desist orders ("CDO") against the Proposed Respondents prohibiting the sale, offer for sale, advertising, marketing, packaging, distribution, maintenance of inventory, or solicitation of any sale or imported Accused

Products, whether through traditional "brick and mortar" retailers, distributors, the Internet, or other electronic means.

## II.   THE PARTIES

### A.   The Complainant

7.      Complainant AGIS Software Development LLC is a limited liability company organized and existing under the laws of the State of Texas and is registered to do business in Texas.  AGIS Software Development LLC ("AGIS Software") was formed in 2017 and has its principal place of business at 100 W. Houston Street, Marshall, Texas 75671.  AGIS Software also has a data center located 1005 Stuart Lane, Marshall, Texas 75672.

8.      Complainant Advanced Ground Information Systems, Inc. ("AGIS, Inc.") is a corporation organized and existing under the laws of the State of Florida and is registered to do business in Florida.  AGIS, Inc. was formed in 2004 and has its principal place of business at 92 Lighthouse Drive, Jupiter, Florida 33469.  AGIS, Inc. utilizes the data center located at 1005 Stuart Lane, Marshall, Texas 75672.

9.      Complainants are innovators, designers, engineers, and distributors of location-sharing and messaging systems and software.  Complainants invested significant labor and financial resources within the United States in connection with the research, design, development, engineering and testing of its location-sharing systems and software products, which are protected by the Asserted AGIS Patents.  Complainants' management and design team has extensive experience in the commercial location-sharing and messaging software industry.  Complainants' LifeRing DI Products have been used throughout the United States, including by U.S. Government entities.

10.     The Chief Executive Officer of AGIS Software and AGIS, Inc., Malcolm K. Beyer, Jr., had a career in the U.S. Navy, graduating from the U.S. Naval Academy in 1962 and

commission as a Second Lieutenant in the U.S. Marine Corps. Mr. Beyer attended the U.S. Navy's programming school and was the lead programmer for the first automated Marine Corps Tactical Operations Center Link-11 Navy Interface. After leaving active service, Mr. Beyer worked at a number of well-known technology companies, including System Development Corporation (considered the world's first computer software company) and Litton Industries. Mr. Beyer then started several businesses that provided technology and engineering solutions supporting defense and military customers.

11.     In 1987, Mr. Beyer co-founded Advanced Programming Concepts, Inc. ("APC"), a Texas corporation based in Austin, Texas. APC operated primarily out of its main business location in Austin, Texas. APC specialized in designing, building, and supporting systems for enabling integration and sharing time-critical information across dissimilar military and defense applications. At APC, Mr. Beyer was the majority shareholder and Chairman until APC was sold to Ultra Electronics in July 1999.

12.     On June 30, 2004, Mr. Beyer founded Advanced Ground Information Systems, Inc. ("AGIS Inc."), a Florida corporation. AGIS Inc. maintains business locations in Jupiter, Florida, Austin, Texas, and Kansas City, Kansas, and employs approximately fifteen people.

13.     In 2013, AGIS Inc. began a corporate restructuring plan for business growth purposes. By 2017, AGIS Inc.'s board of directors approved the restructuring plan that resulted in the formation of a parent corporation, AGIS Holdings, Inc. ("AGIS Holdings"), a Florida corporation. AGIS Holdings consists of two subsidiaries: AGIS Inc. and AGIS Software. Each is a separate corporate entity. AGIS Software was established in Texas because of Mr. Beyer's previous successful business operations and longstanding personal connections to Texas.

14.     AGIS Software obtained the intellectual property of AGIS Inc. and AGIS Holdings and holds all rights, title, and interest in and to the Asserted AGIS Software Patents.

15.     Complainants have dedicated significant labor and financial resources in the United States to invent, design, develop, engineer, test, and calibrate several improved location-sharing systems, devices, and software.  As a result of Complainants' investments, it has developed certain valuable know-how relating to the design, development, engineering, assembly, and testing of location-sharing systems, related software, and products, and to the distribution and sale of such location-sharing devices and software.  Furthermore, as discussed below in Section IV, Complainants filed patent applications to protect certain aspects of these improved location-sharing devices and software.  Those filings have resulted in multiple issued United States patents, including the Asserted AGIS Patents.

### B.     The Proposed Respondents

16.     On information and belief, the Proposed Respondents include original equipment manufacturers, re-sellers, and distributors, including agents therefor, that import, sell for importation, offer for sale, and/or sell within the United States after importation of location-sharing systems, related software, components thereof, and products containing same that infringe one or more claims of the Asserted AGIS Patents.

### 1.  Google LLC

17.     On information and belief, Proposed Respondent Google LLC ("Google") is a limited liability company organized and existing under the State of Delaware, with its principal place of business at 1600 Amphitheatre Parkway, Mountain View, California 94043.  On information and belief, Google manufactures, imports into the United States, sells for importation, markets, offers for sale, sells, and distributes within the United States after importation Accused Products that directly infringe, literally and/or under the doctrine of equivalents, one or more

claims of the Asserted AGIS Patents in violation of 35 U.S.C. § 271(a) and Section 337(a)(1)(B)(i). The Google Accused Products satisfy all claim limitations of one or more claims of the Asserted AGIS Patents at the time of importation into the United States.

**2. Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.**

18.    On information and belief, Proposed Respondent Samsung Electronics Co., Ltd. is a corporation organized and existing under the laws of the Republic of Korea, with its principal place of business at 129 Samsung-Ro, Yeongtong-Gu, Suwon-Si, Gyeonggi-Do, 443-742, Republic of Korea.  On information and belief, Samsung Electronics Co., Ltd. manufactures the Accused Products in Korea and imports, sells for importation, offers for sale, and/or sells within the United States after importation the Accused Products.

19.    On information and belief, Proposed Respondent Samsung Electronics America, Inc. is a corporation organized under the laws of the State of New York, with its principal place of business at 85 Challenger Road, Ridgefield Park, NJ 07660.  On information and belief, Samsung Electronics America, Inc. imports, sells for importation, markets, offers for sale, sells, and distributes within the United States after importation the Accused Products manufactured by Samsung Electronics Co., Ltd.

20.    On information and belief, Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. are related entities; these entities are therefore collectively referred to herein as "Samsung."

21.    As further detailed below, Samsung manufactures, imports into the United States, sells for importation, markets, sells, and distributes within the United States after importation one or more Accused Products that directly infringe, literally and/or under the doctrine of equivalents, one or more claims of the Asserted AGIS Patents in violation of 35 U.S.C. § 271(a) and Section

337(a)(1)(B)(i).  The Samsung Accused Products satisfy all claim limitations of one or more claims of the Asserted AGIS Patents at the time of importation into the United States.

### 3.  OnePlus Technology (Shenzhen) Co., Ltd.

22.    On information and belief, Proposed Respondent OnePlus Technology (Shenzhen) Co., Ltd. ("OnePlus") is a corporation organized and existing under the laws of China, with its principal place of business located at 18F, Tairan Building, Block C, Tairan 8th Road, Chegongmiao, Futian District, Shenzhen, Guangdong 518040, China.  On information and belief, OnePlus manufactures, imports into the United States, sells for importation, markets, offers for sale, sells, and distributes within the United States after importation the Accused Products that directly infringe, literally and/or under the doctrine of equivalents, one or more claims of the Asserted AGIS Patents in violation of 35 U.S.C. § 271(a) and Section 337(a)(1)(B)(i).  The OnePlus Accused Products satisfy all claim limitations of one or more claims of the Asserted AGIS Patents at the time of importation into the United States.

### 4.  TCL Technology Group Corporation, TCL Communication Technology Holdings Limited, TCL Electronics Holdings Limited, and TCT Mobile (US) Inc.

23.    On information and belief, Proposed Respondent TCL Technology Group Corporation f/k/a TCL Corporation ("TCL Technology") is a corporation organized and existing under the laws of China, with its principal place of business at 22/F, TCL Technology Building, No. 17, Huifeng 3rd Road, Zhongkai High-Tech Development District, Huizhou, Guangdong, China 516006.[1]  On information and belief, TCL Technology manufactures the Accused Products

---

[1] *See Ironworks Patents, LLC v. TCL Comm'n Tech. Hldgs. Ltd. et al.*, No. 2:18-cv-02472-AB-AGR, Dkt. 46 (C.D. Cal. Aug. 3, 2018).

in China and imports, sells for importation, offers for sale, and/or sells within the United States after importation the Accused Products.[2]

24.    On information and belief, Proposed Respondent TCL Communication Technology Holdings Limited ("TCL Comm. Tech.") is a company organized and existing under the laws of the Cayman Islands with its principal place of business at 5/F, Building 22E, 22 Science Park East Avenue, Hong Kong Science Park, Shatin, New Territories, Hong Kong.[3]  On information and belief, TCL Comm. Tech. designs, develops, manufactures, markets, offers for sale, sells, and distributes within the United States after importation the Accused Products.[4]

25.    On information and belief, Proposed Respondent TCL Electronics Holdings Limited ("TCL Electronics") is a company organized and existing under the laws of the Cayman Islands, with its principal place of business and headquarters at 7th Floor, Building 22E, 22 Science Park East Avenue, Hong Kong Science Park, Shatin, New Territories, Hong Kong.  On information and belief, TCL Electronics imports, sells for importation, markets, offers for sale, sells, and distributes within the United States after importation the Accused Products.[5]

26.    On information and belief, Proposed Respondent TCT Mobile (US) Inc. ("TCT Mobile (US)") is a corporation organized under the laws of the state of Delaware, with its principal place of business at 25 Edelman, Suite 200, Irvine, California 92618.[6]  On information and belief,

---

[2] *Id.*

[3] *See Ironworks Patents, LLC v. TCL Comm'n Tech. Hldgs. Ltd. et al.*, No. 2:18-cv-02472-AB-AGR, Dkt. 46 (C.D. Cal. Aug. 3, 2018).

[4] https://www.tclcom.com/?page=company_profile;
http://www.tctusa.com/#:~:text=TCL%20Communication%20Technology%20Holdings%20Limited,sold%20in%20over%20160%20countries.

[5] *See, e.g., TCL Industries Holdings Co., Ltd. et al. v. Bell Northern Research*, No. 21-cv-1598-GPS-WVG, Dkt. 1 (S.D. Cal. Sept. 13, 2021) ("TCL is a manufacturer and seller of consumer electronics, including mobile phones . . .").

[6] *See, e.g., Godo Kaisha IP Bridge 1 v. TCL Comm'n Tech. Hldgs. Ltd.*, No. 1:15-cv-00634, Dkt. 16 (D. Del. Dec. 11, 2015); *see also Ironworks Patents, LLC v. TCL Comm'n Tech. Hldgs. Ltd. et*

TCT Mobile offers for sale, supports, imports,[7] and/or sells within the United States after importation, mobile devices including smart phones.[8]  TCL Technology has previously admitted that "that TCT Mobile (US) Inc. is in the business of importing and/or selling within the United States after importation, into the United States, consumer products containing semiconductor devices and integrated circuits that are manufactured outside of the United States including smartphones. TCL has admitted that TCT Mobile (US) Inc. use the trade names Blackberry and Alcatel in the United States, which it currently holds the exclusive license to use."[9]

27.     On information and belief, TCL Technology, TCL Comm. Tech., TCL Electronics, and TCT Mobile. are related entities; these entities are therefore collectively referred to herein as "TCL."

28.     As further detailed below, TCL manufactures, imports into the United States, sells for importation, markets, sells, and distributes within the United States after importation one or more Accused Products that directly infringe, literally and/or under the doctrine of equivalents, one or more claims of the Asserted AGIS Patents in violation of 35 U.S.C. § 271(a) and Section 337(a)(1)(B)(i).  The TCL Accused Products satisfy all claim limitations of one or more claims of the Asserted AGIS Patents at the time of importation into the United States.

---

*al.*, No. 2:18-cv-02472-AB-AGR, Dkt. 46 (C.D. Cal. Aug. 3, 2018) ("TCL admits that TCT Mobile (US) Inc. is engaged in sales of wireless mobile devices including smartphones.").
[7] https://www.importgenius.com/importers/tct-mobile-us-inc?b=f.
[8] *See, e.g., Godo Kaisha IP Bridge 1 v. TCL Comm'n Tech. Hldgs. Ltd.*, No. 1:15-cv-00634, Dkt. 16 (D. Del. Dec. 11, 2015); *Certain Semiconductor Devices, Integrated Circuits, & Consumer Prods. Containing the Same*, Inv. No. 337-TA-1149, Response of Respondents TCL Corp. et al. (Doc. No. 673685, ) (Apr. 22, 2019).
[9] *Certain Semiconductor Devices, Integrated Circuits, & Consumer Prods. Containing the Same*, Inv. No. 337-TA-1149, Response of Respondents TCL Corp. et al. (Doc. No. 673685) (Apr. 22, 2019).

5. **Lenovo Group Ltd., Lenovo (United States) Inc., and Motorola Mobility LLC**

29.     On information and belief, Proposed Respondent Lenovo Group Ltd. ("Lenovo Group") is a company organized and existing under the laws of China, with its principal place of business located at 6 Chuang ye Road, Haidian District, Beijing 100085, China.  On information and belief, Lenovo Group manufactures, imports, sells for importation, offers for sale, and/or sells within the United States after importation the Lenovo Accused Products.

30.     Proposed Respondent Lenovo (United States) Inc. ("Lenovo US") is a Delaware Corporation with its principal place of business at 1009 Think Place, Building One, Morrisville, NC 27560.  On information and belief, Lenovo US manufactures, imports, sells for importation, offers for sale, and/or sells within the United States after importation the Accused Products.

31.     Respondent Motorola Mobility LLC ("Motorola") is a Delaware limited liability company with its principal place of business at 222 W. Merchandise Mart Plaza, Suite 1800, Chicago, IL 60654.  On information and belief, Motorola manufactures, imports, sells for importation, offers for sale, and/or sells within the United States after importation the Accused Products.

32.     On information and belief, Lenovo Group, Lenovo US, and Motorola are related entities; these entities are therefore collectively referred to herein as "Lenovo."

33.     As further detailed below, Lenovo manufactures, imports into the United States, sells for importation, markets, sells, and distributes within the United States after importation one or more Accused Products that directly infringe, literally and/or under the doctrine of equivalents, one or more claims of the Asserted AGIS Patents in violation of 35 U.S.C. § 271(a) and Section 337(a)(1)(B)(i).  The Lenovo Accused Products satisfy all claim limitations of one or more claims of the Asserted AGIS Patents at the time of importation into the United States.

**6. HMD Global, HMD Global OY, and HMD America, Inc.**

34.    On information and belief, Proposed Respondent HMD Global ("HMD Global") is a company organized and existing under the laws of Finland, with its principal place of business located at Karaportti 2, FIN-02610, Espoo, Finland.  On information and belief, HMD Global manufactures, imports, sells for importation, offers for sale, and/or sells within the United States after importation the HMD Accused Products.

35.    Proposed Respondent HMD Global OY ("HMD Global OY") is a company organized and existing under the laws of Finland, with its principal place of business at Bertel Jungin aukio 9, 02600, Espoo, Finland.  On information and belief, HMD Global OY manufactures, imports, sells for importation, offers for sale, and/or sells within the United States after importation the Accused Products.

36.    Proposed Respondent HMD America, Inc. ("HMD America") is a corporation organized and existing under the laws of the state of Florida, with its principal place of business at 1200 Brickell Ave., Suite 510, Miami, Florida 33131.  On information and belief, HMD America offers for sale and/or sells within the United States after importation the Accused Products.

37.    On information and belief, HMD Global, HMD Global OY, and HMD America are related entities; these entities are therefore collectively referred to herein as "HMD."

38.    As further detailed below, HMD manufactures, imports into the United States, sells for importation, markets, sells, and distributes within the United States after importation one or more Accused Products that directly infringe, literally and/or under the doctrine of equivalents, one or more claims of the Asserted AGIS Patents in violation of 35 U.S.C. § 271(a) and Section 337(a)(1)(B)(i).  The HMD Accused Products satisfy all claim limitations of one or more claims of the Asserted AGIS Patents at the time of importation into the United States.

**7.  Sony Corporation and Sony Mobile Communications, Inc.**

39.     On information and belief, Proposed Respondent Sony Corporation ("Sony Corporation") is a company organized and existing under the laws of Japan, with its principal place of business located at 1-7-1 Konan Minato-ku, Tokyo, 108-0075, Japan.  On information and belief, Sony Corporation manufactures, imports, sells for importation, offers for sale, and/or sells within the United States after importation the Sony Accused Products.

40.     Proposed Respondent Sony Mobile Communications, Inc. ("Sony Mobile") is a corporation organized and existing under the laws of the state of New York with its principal place of business at 4-12-3 Higashi-Shinagawa, Shinagawa-ku, Tokyo, 140-0002, Japan.    On information and belief, Sony Mobile manufactures, imports, sells for importation, offers for sale, and/or sells within the United States after importation the Accused Products.

41.     On information and belief, Sony Corporation and Sony Mobile are related entities; these entities are therefore collectively referred to herein as "Sony."

42.     As further detailed below, Sony manufactures, imports into the United States, sells for importation, markets, sells, and distributes within the United States after importation one or more Accused Products that directly infringe, literally and/or under the doctrine of equivalents, one or more claims of the Asserted AGIS Patents in violation of 35 U.S.C. § 271(a) and Section 337(a)(1)(B)(i).  The Sony Accused Products satisfy all claim limitations of one or more claims of the Asserted AGIS Patents at the time of importation into the United States.

**8.  ASUSTek Computer Inc. and ASUS Computer International**

43.     On information and belief, Proposed Respondent ASUSTek Computer Inc. ("ASUSTek Computer") is a company organized and existing under the laws of Taiwan, with its principal place of business located at No. 15, Li-Te Rd., Beitou District, Taipei City 112, Taiwan.

On information and belief, ASUSTek Computer manufactures, imports, sells for importation, offers for sale, and/or sells within the United States after importation the ASUS Accused Products.

44.    Proposed Respondent ASUS Computer International ("ASUS Computer") is a company organized and existing under the laws of State of California, with its principal place of business at 48720 Kato Road, Fremont, California 94538.   On information and belief, ASUS Computer manufactures, imports, sells for importation, offers for sale, and/or sells within the United States after importation the Accused Products.

45.    On information and belief, ASUSTek Computer and ASUS Computer are related entities; these entities are therefore collectively referred to herein as "ASUS."

46.    As further detailed below, ASUS manufactures, imports into the United States, sells for importation, markets, sells, and distributes within the United States after importation one or more Accused Products that directly infringe, literally and/or under the doctrine of equivalents, one or more claims of the Asserted AGIS Patents in violation of 35 U.S.C. § 271(a) and Section 337(a)(1)(B)(i).  The ASUS Accused Products satisfy all claim limitations of one or more claims of the Asserted AGIS Patents at the time of importation into the United States.

### 9.  Caterpillar Inc.

47.    On information and belief, Proposed Respondent Caterpillar Inc. ("Caterpillar") is a corporation organized and existing under the laws of the state of Delaware, with its principal place of business located at 100 NE Adams St., Peoria, Illinois 61629 . On information and belief, Caterpillar manufactures, imports into the United States, sells for importation, markets, offers for sale, sells, and distributes within the United States after importation the Accused Products that directly infringe, literally and/or under the doctrine of equivalents, one or more claims of the Asserted AGIS Patents in violation of 35 U.S.C. § 271(a) and Section 337(a)(1)(B)(i).   The

Caterpillar Accused Products satisfy all claim limitations of one or more claims of the Asserted AGIS Patents at the time of importation into the United States.

### 10. BLU Products, Inc.

48.    On information and belief, Proposed Respondent BLU Products, Inc. ("BLU") is a corporation organized and existing under laws of the state of Florida, with its principal place of business located at 10814 NW 33rd Street, Doral, Florida 33172.  On information and belief, BLU manufactures, imports into the United States, sells for importation, markets, offers for sale, sells, and distributes within the United States after importation the Accused Products that directly infringe, literally and/or under the doctrine of equivalents, one or more claims of the Asserted AGIS Patents in violation of 35 U.S.C. § 271(a) and Section 337(a)(1)(B)(i).  The BLU Accused Products satisfy all claim limitations of one or more claims of the Asserted AGIS Patents at the time of importation into the United States.

### 11. Panasonic Corporation and Panasonic Corporation of North America

49.    On information and belief, Proposed Respondent Panasonic Corporation is a corporation organized under the laws of Japan and headquartered at 1006, Oaza Kadoma, Kadoma-shi, Osaka 571-8501, Japan. On information and belief, Panasonic Corporation manufactures the Accused Products in Japan and imports, sells for importation, offers for sale, and/or sells within the United States after importation the Accused Products.

50.    On information and belief, Proposed Respondent Panasonic Corporation of North America is a corporation organized and existing under the laws of the state of New Jersey and headquartered at Two Riverfront Plaza, 828 McCarter Highway, Newark, New Jersey 07102. On information and belief, Panasonic Corporation of North America imports, sells for importation, markets, offers for sale, sells, and distributes within the United States after importation the Accused Products manufactured by Panasonic Corporation.

51.    On information and belief, Panasonic Corporation and Panasonic Corporation of North America are related entities; these entities are therefore collectively referred to herein as "Panasonic."

52.    As further detailed below, Panasonic manufactures, imports into the United States, sells for importation, markets, offers for sale, sells, and distributes within the United States after importation the Accused Products that directly infringe, literally and/or under the doctrine of equivalents, one or more claims of the Asserted AGIS Patents in violation of 35 U.S.C. § 271(a) and Section 337(a)(1)(B)(i).  The Panasonic Accused Products satisfy all claim limitations of one or more claims of the Asserted AGIS Patents at the time of importation into the United States.

**12. Kyocera Corporation**

53.    On information and belief, Proposed Respondent Kyocera Corporation ("Kyocera") is a corporation organized under the laws of Japan with a place of business at 6 Takeda Tobadono-cho, Fushmi-ku, Kyoto, Japan 612-8501.    On information and belief, Kyocera manufactures, imports into the United States, sells for importation, markets, offers for sale, sells, and distributes within the United States after importation the Accused Products that directly infringe, literally and/or under the doctrine of equivalents, one or more claims of the Asserted AGIS Patents in violation of 35 U.S.C. § 271(a) and Section 337(a)(1)(B)(i).    The Kyocera Accused Products satisfy all claim limitations of one or more claims of the Asserted AGIS Patents at the time of importation into the United States.

**13. Xiaomi Corporation, Xiaomi Communications Co., Ltd., Xiaomi H.K. Ltd., and Xiaomi Inc.**

54.    On information and belief, Proposed Respondent Xiaomi Corporation is a corporation organized under the laws of the Cayman Islands with a place of business at Maples Corporate Services Limited, P.O. Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman

Islands.  On information and belief, Xiaomi Corporation designs, manufactures, and markets the Accused Products in China and imports, sells for importation, offers for sale, and/or sells within the United States after importation the Accused Products.

55.    On information and belief, Proposed Respondent Xiaomi Communications Co., Ltd. is a corporation organized under the laws of People's Republic of China, with its principal place of business at Xiaomi Office Building, 68 Qinghe Middle Street, Haidian District, Beijing, China 100085.  On information and belief, Xiaomi Communications Co., Ltd. manufactures, designs, imports, sells for importation, markets, offers for sale, sells, and distributes within the United States.

56.    On information and belief, Proposed Respondent Xiaomi H.K. Ltd. is a corporation organized under the laws of Hong Kong, with its principal place of business at Unit 806, Tower 2 8/F, Cheung Sha Wan Plaza, 833 Cheung Sha Wan Road, Kowloon City, Hong Kong.  On information and belief, Xiaomi H.K. Ltd. imports, sells for importation, markets, offers for sale, sells, and distributes within the United States after importation the Accused Products manufactured by Xiaomi Corporation and Xiaomi Communications Co., Ltd.

57.    On information and belief, Proposed Respondent Xiaomi Inc. is a corporation organized under the laws of People's Republic of China, with its principal place of business at Xiaomi Office Building, 68 Qinghe Middle Street, Haidian District, Beijing, China 100085.  On information and belief, Xiaomi Inc. imports, sells for importation, markets, offers for sale, sells, and distributes within the United States after importation the Accused Products manufactured by Xiaomi Corporation and Xiaomi Communications Co., Ltd.

58.     On information and belief, Xiaomi Corporation, Xiaomi H.K. Ltd., Xiaomi Communications Co., Ltd., and Xiaomi Inc. are related entities; these entities are therefore collectively referred to herein as "Xiaomi."

59.     On information and belief, Xiaomi manufactures, imports into the United States, sells for importation, markets, offers for sale, sells, and distributes within the United States after importation the Accused Products that directly infringe, literally and/or under the doctrine of equivalents, one or more claims of the Asserted AGIS Patents in violation of 35 U.S.C. § 271(a) and Section 337(a)(1)(B)(i).  The Xiaomi Accused Products satisfy all claim limitations of one or more claims of the Asserted AGIS Patents at the time of importation into the United States.

## III.     THE TECHNOLOGY AND PRODUCTS AT ISSUE

60.     Pursuant to 19 C.F.R. §§ 210.10(b)(1) and 210.12(a)(12), the categories of products accused of infringing one or more of the Asserted AGIS Patents are mobile devices containing location-sharing software, mobile phones and tablets containing location-sharing software, notebook and laptop computers containing location- sharing software, and associated components thereof.   Proposed Respondents infringe the Asserted AGIS Patents through the sale for importation into the United States, importation into the United States, and/or sale within the United States after importation of such Accused Products.  Exemplary identifications of such infringing products are provided in **Section VI** below.

61.     Without discovery, Complainants cannot exhaustively identify all devices sold for importation into the United States, imported into the United States, and/or sold within the United States after importation that infringe the Asserted AGIS Patents.  Complainants reserve the right to supplement its allegations, to further amend this Complaint, and to add respondents and accused products in the future, if necessary, based on discovery received during the Investigation.

## IV.    THE ASSERTED AGIS PATENTS

### A.    The '970 Patent

#### 1.    Identification of the Patent and Ownership

62.    The '970 Patent, titled "METHOD OF UTILIZING FORCED ALERTS FOR INTERACTIVE REMOTE COMMUNICATIONS," issued on July 3, 2012, naming Malcolm K. Beyer. **Exhibit 1** ('970 Patent) at 1.  The '970 Patent is based on U.S. Patent Application No. 12/324,122 filed November 26, 2008, which is a continuation-in-part of application No. 11/612,830, filed on December 19, 2006, which is a continuation-in-part of application No. 11/308,648 (now U.S. Patent No. 8,630,724), filed on April 17, 2007, which is a continuation-in-part of application No. 10/711,490 (now U.S. Patent No. 7,031,728), filed September 21, 2004. The expiration date of the '970 Patent is June 2, 2025.  A certified copy of the '970 Patent is attached as **Exhibit 1**.  This complaint is accompanied by a certified copy of the prosecution history for the '970 Patent, three additional copies of the prosecution history, and four copies of each patent and applicable pages of each technical reference mentioned in the prosecution history for the '970 Patent.  *See* Exhibit 1; Appx. A1-A2.

63.    AGIS Software owns by assignment all rights, title, and interest in the '970 Patent. *See* Ex. 71.

#### 2.    Nontechnical Description of the Patent

64.    The '970 Patent relates to a forced message alert software on PC or PDA/cell phone devices.

65.    The '970 Patent describes a method and apparatus that seeks to allow individuals to create or send a voice or text message alert that forces an automatic acknowledgement upon receipt and a manual response from the recipient.

66.    The '970 Patent provides an approach in providing forced alert messages to groups of devices in cellular networks and provides the ability to (1) allow an operator to create and transmit a forced voice alert from a sender to a recipient within a communications network; (2) automatically transmit an acknowledgement of receipt from the recipient to the sender upon receipt of the forced message alert by the recipient; (3) periodically resent the message to the recipient(s) that have not sent an acknowledgement until an acknowledgement is received from each recipient; (4) provide an indication of the display of the sender of which recipient(s) have acknowledged the forced message alert; (e) provide a manual response list on the display of recipients' devices that can be cleared only by manually selecting and transmitting a response; and (f) provide an indication on the sender device of the status of the manual responses and the contents of the manual responses from each recipient.

67.    The invention of the '970 Patent also discloses the use of a server to forward message data and a method to require a response from each recipient.  The server acts as a forwarder of communications.

### 3.    Foreign Counterparts of the Patent

68.    The following foreign patents and patent applications correspond to the '970 Patent: (1) Japanese Patent No. 4996466; and (2) European Patent No. 1800498.

69.    To the best of Complainants' knowledge, information, and belief, there are no other foreign patents issued or foreign patent applications pending, filed, abandoned, withdrawn, or rejected corresponding to the '970 Patent.

### 4.    Licensees

70.    All licensees to the '970 Patent are identified in **Confidential Exhibit 136C.**  There are no other known licensees related to the '970 Patent.

### B.    The '838 Patent

#### 1.    Identification of the Patent and Ownership

71.    The '838 Patent, titled "METHOD TO PROVIDE AD HOC AND PASSWORD PROTECTED DIGITAL AND VOICE NETWORKS," issued on September 13, 2016, naming Malcolm K. Beyer, Jr. and Christopher R. Rice.  **Exhibit 2** ('838 Patent) at 1.  The '838 Patent is based on U.S. Patent Application No. 14/529,978 filed October 31, 2014, which is a continuation-in-part of application No. 14/027,410 (now U.S. Patent No. 8,880,042), filed on September 16, 2013, which is a continuation of application No. 13/751,453 (now U.S. Patent No. 8,538,393), filed on January 28, 2013, which is a continuation-in-part of application No. 12/761,533 (now U.S. Patent No. 9,364,129), filed on April 16, 2010, which is a continuation-in-part of application No. 11/615,472 (now U.S. Patent No. 8,126,441), filed on December 22, 2006, which is a continuation-in-part of application No. 11/308,648 (now U.S. Patent No. 7,630,724), filed on April 17, 2006, which is a continuation-in-part of application No. 10/711,490 (now U.S. Patent No. 7,031,728), filed on September 21, 2004.  The expiration date of the '838 Patent is September 21, 2024.  A certified copy of the '838 Patent is attached as **Exhibit 2**.  This complaint is accompanied by a certified copy of the prosecution history for the '838 Patent, three additional copies of the prosecution history, and four copies of each patent and applicable pages of each technical reference mentioned in the prosecution history for the '838 Patent.  *See* Exhibit 2; Appx. B1-B2.

72.    AGIS Software owns by assignment all rights, title, and interest in the '838 Patent. *See* Ex. 72.

#### 2.    Nontechnical Description of the Patent

73.    The '838 Patent relates to the use of interactive mapping on a device to share device locations with the members of a group.

74.    The '838 Patent describes a method and apparatus that seeks to allow individuals to set up an ad hoc digital and voice network to easily and rapidly allow users to coordinate their activities by eliminating the need for pre-entry of data into a web or identifying others by name, phone numbers, or email addresses.

75.    The '838 Patent provides an approach for digital communications to quickly establish user specific password protected private ad hoc voice and data networks to enable data and voice communications with different, not pre-known, organizations or individuals. The '838 Patent also discloses a server(s) which coordinates communication and passes location and status information between network participants, even if participants have not entered the name, phone number, or email address of these participants.

76.    The invention of the '838 Patent contemplates locations can be displayed on a map and geographic information can be used to filter messages.  In one embodiment, the '838 Patent discloses a geographical display with symbols which represent communication net participants with cellular phones, where the latitude and longitude of the symbol are associated within a database with a specific cell phone number, and where available, IP address and email address. The touch screen display of the cellular phone provides the x and y coordinates of the screen to the CPU's software from a map.

### 3.    Foreign Counterparts of the Patent

77.    The following foreign patents and patent applications correspond to the '838 Patent: (1) Japanese Patent No. 4996466; and (2) European Patent No. 1800498.

78.    To the best of Complainants' knowledge, information, and belief, there are no other foreign patents issued or foreign patent applications pending, filed, abandoned, withdrawn, or rejected corresponding to the '838 Patent.

### 4.    Licensees

79.    All licensees to the '838 Patent are identified in **Confidential Exhibit 136C.**  There are no other known licensees related to the '838 Patent.

### C.    The '251 Patent

### 1.    Identification of the Patent and Ownership

80.    The '251 Patent, titled "METHOD TO PROVIDE AD HOC AND PASSWORD PROTECTED DIGITAL AND VOICE NETWORKS," issued on September 13, 2016, naming Malcolm K. Beyer, Jr. and Christopher R. Rice.  **Exhibit 3** ('251 Patent) at 1.  The '251 Patent is based on U.S. Patent Application No. 14/633,804 filed February 27, 2015, which is a continuation of application No. 14/529,978, filed on October 31, 2014, which is a continuation-in-part of application No. 14/027,410 (now U.S. Patent No. 8,880,042), filed on September 16, 2013, which is a continuation of application No. 13/751,453 (now U.S. Patent No. 8,538,393), filed on January 28, 2013, which is a continuation-in-part of application No. 12/761/533 (now U.S. Patent No. 9,364,129), filed on April 16, 2010, which is a continuation-in-part of application No. 11/615,472 (now U.S. Patent No. 8,126,441), filed on December 22, 2006, which is a continuation-in-part of application No. 11/308,648 (now U.S. Patent No. 7,630,724), filed on April 17, 2006, which is a continuation-in-part of application No. 10/711,490 (now U.S. Patent No. 7,031,728), filed on September 21, 2004.  The expiration date of the '251 Patent is September 21, 2024.  A certified copy of the '251 Patent is attached as **Exhibit 3**.  This complaint is accompanied by a certified copy of the prosecution history for the '251 Patent, three additional copies of the prosecution history, and four copies of each patent and applicable pages of each technical reference mentioned in the prosecution history for the '251 Patent.  *See* Exhibit 3; Appx. C1-C2.

81.    AGIS Software owns by assignment all rights, title, and interest in the '251 Patent. *See* Ex. 73.

### 2.      Nontechnical Description of the Patent

82.      The '251 Patent relates to the use of interactive mapping on a device to share device locations with the members of a group.

83.      The '251 Patent is a continuation of the '838 Patent, and shares a specification with the '838 Patent.

### 3.      Foreign Counterparts of the Patent

84.      The following foreign patents and patent applications correspond to the '251 Patent: (1) Japanese Patent No. 4996466; and (2) European Patent No. 1800498.

85.      To the best of Complainants' knowledge, information, and belief, there are no other foreign patents issued or foreign patent applications pending, filed, abandoned, withdrawn, or rejected corresponding to the '251 Patent.

### 4.      Licensees

86.      All licensees to the '251 Patent are identified in **Confidential Exhibit 136C**.  There are no other known licensees related to the '251 Patent.

### D.      The '829 Patent

### 1.      Identification of the Patent and Ownership

87.      The '829 Patent, titled "METHOD TO PROVIDE AD HOC AND PASSWORD PROTECTED DIGITAL AND VOICE NETWORKS," issued on August 29, 2017, naming Malcolm K. Beyer, Jr. and Christopher R. Rice.  **Exhibit 4** ('829 Patent) at 1.  The '829 Patent is based on U.S. Patent Application No. 14/633,764 filed February 27, 2015, which is a continuation of application No. 14/529,978, filed on October 31, 2014, which is a continuation-in-part of application No. 14/027,410 (now U.S. Patent No. 8,880,042), filed on September 16, 2013, which is a continuation of application No. 13/751,453 (now U.S. Patent No. 8,538,393), filed on January 28, 2013, which is a continuation-in-part of application No. 12/761,533 (now U.S. Patent No.

9,364,129), filed on April 16, 2010, which is a continuation-in-part of application No. 11/615,472 (now U.S. Patent No. 8,126,441), filed on December 22, 2006, which is a continuation-in-part of application No. 11/308,648 (now U.S. Patent No. 7,630,724), filed on April 17, 2006, which is a continuation-in-part of application No. 10/711,490 (now U.S. Patent No. 7,031,728), filed on September 21, 2004.  The expiration date of the '251 Patent is September 21, 2024.  A certified copy of the '829 Patent is attached as **Exhibit 4**.  This complaint is accompanied by a certified copy of the prosecution history for the '829 Patent, three additional copies of the prosecution history, and four copies of each patent and applicable pages of each technical reference mentioned in the prosecution history for the '829 Patent.  *See* Exhibit 4; Appx. D1-D2.

88.    AGIS Software owns by assignment all rights, title, and interest in the '829 Patent. *See* Ex. 74.

### 2.    Nontechnical Description of the Patent

89.    The '829 Patent relates to a method and communication system to quickly set up and provide an ad hoc, password protected, digital and voice network which allows a group of people to be able to set up a network easily and rapidly, and the use of interactive mapping on a device to share device locations with members of a group.

90.    The '829 Patent is a continuation of the '838 Patent, and shares a specification with the '838 Patent.

91.    In addition to the disclosures of the '838 Patent, the '829 Patent discloses a system by which a server coordinates communication and passes location and status information between network participants, even where network participants have not entered the name, phone number, or email address of other network participants.

### 3.    Foreign Counterparts of the Patent

92.    The following foreign patents and patent applications correspond to the '829 Patent: (1) Japanese Patent No. 4996466; and (2) European Patent No. 1800498.

93.    To the best of Complainants' knowledge, information, and belief, there are no other foreign patents issued or foreign patent applications pending, filed, abandoned, withdrawn, or rejected corresponding to the '829 Patent.

### 4.    Licensees

94.    All licensees to the '829 Patent are identified in **Confidential Exhibit 136C.** There are no other known licensees related to the '829 Patent.

### E.    The '123 Patent

### 1.    Identification of the Patent and Ownership

95.    The '123 Patent, titled "METHOD TO PROVIDE AD HOC AND PASSWORD PROTECTED DIGITAL AND VOICE NETWORKS," issued on November 14, 2017, naming Malcolm K. Beyer, Jr. and Christopher R. Rice.  **Exhibit 5** ('123 Patent) at 1.  The '123 Patent is based on U.S. Patent Application No. 15/255,046, filed September 1, 2016, which is a continuation of U.S. Patent Application No. 14/633,804 filed February 27, 2015, which is a continuation of application No. 14/529,978, filed on October 31, 2014, which is a continuation-in-part of application No. 14/027,410 (now U.S. Patent No. 8,880,042), filed on September 16, 2013, which is a continuation of application No. 13/751,453 (now U.S. Patent No. 8,538,393), filed on January 28, 2013, which is a continuation-in-part of application No. 12/761,533 (now U.S. Patent No. 9,364,129), filed on April 16, 2010, which is a continuation-in-part of application No. 11/615,472 (now U.S. Patent No. 8,126,441), filed on December 22, 2006, which is a continuation-in-part of application No. 11/308,648 (now U.S. Patent No. 7,630,724), filed on April 17, 2006, which is a continuation-in-part of application No. 10/711,490 (now U.S. Patent No. 7,031,728), filed on

September 21, 2004.  The expiration date of the '123 Patent is September 21, 2024.  A certified copy of the '123 Patent is attached as **Exhibit 5**.  This complaint is accompanied by a certified copy of the prosecution history for the '123 Patent, three additional copies of the prosecution history, and four copies of each patent and applicable pages of each technical reference mentioned in the prosecution history for the '123 Patent.  *See* Exhibit 5; Appx. E1-E2.

96.    AGIS Software owns by assignment all rights, title, and interest in the '123 Patent. *See* Ex. 75.

### 2.    Nontechnical Description of the Patent

97.    Like the '829 Patent, the '123 Patent relates to the use of interactive mapping on a device to share device locations with the members of a group.

98.    The '123 Patent is a continuation of the '838 Patent, and shares a specification with the '838 Patent and the '829 Patent.

### 3.    Foreign Counterparts of the Patent

99.    The following foreign patents and patent applications correspond to the '123 Patent: (1) Japanese Patent No. 4996466; and (2) European Patent No. 1800498.

100.    To the best of Complainants' knowledge, information, and belief, there are no other foreign patents issued or foreign patent applications pending, filed, abandoned, withdrawn, or rejected corresponding to the '123 Patent.

### 4.    Licensees

101.    All licensees to the '123 Patent are identified in **Confidential Exhibit 136C**.  There are no other known licensees related to the '123 Patent.

## V.    SPECIFIC INSTANCES OF IMPORTATION AND SALE

102.    The specific instances of importation and sale of the Accused Products set forth below are illustrative and non-exhaustive examples of the Proposed Respondents' unlawful

41

importation and sale of Accused Products that infringe the Asserted Patent literally and/or under the doctrine of equivalents.

### A.    Google

103.    On information and belief, Google imports, sells for importation, and/or sells within the United States after importation, the Google Accused Products, including the representative Google Pixel 6, that infringe the Asserted Patents.

104.    The specific instances set forth below are representative examples of Google's unlawful importation, sale for importation, and/or sale within the United States after importation of infringing products.

105.    Prior to filing the Complaint, representatives for Complainants purchased the representative Accused Products in the United States.  **Exhibit 76** includes a copy of the receipt for purchase in the United States of a representative product and **Exhibits 77 - 79** include a series of photographs of the product.  Labels on the product state that the product was "Designed by Google" and "Made in China." **Exhibit 77.**

### B.    Samsung Respondents

106.    On information and belief, the Samsung Respondents import, sell for importation, and/or sell within the United States after importation, the Samsung Accused Products, including the representative Samsung Galaxy S22+, that infringe the Asserted Patents.

107.    The specific instances set forth below are representative examples of the Samsung Respondents' unlawful importation, sale for importation, and/or sale within the United States after importation of infringing products.

108.    Prior to filing the Complaint, representatives for Complainants purchased the representative Accused Products in the United States.  **Exhibit 80** includes a copy of the receipt for purchase in the United States of a representative product and **Exhibits 81-82** include a series

of photographs of the product.  Labels on the product state that the product was "Made in Vietnam." **Exhibit 81**.

### C.    OnePlus

109.    On information and belief, OnePlus imports, sells for importation, and/or sells within the United States after importation, the OnePlus Accused Products, including the representative OnePlus 8T, that infringe the Asserted Patents.

110.    The specific instances set forth below are representative examples of OnePlus' unlawful importation, sale for importation, and/or sale within the United States after importation of infringing products.

111.    Prior to filing the Complaint, representatives for Complainants purchased the representative Accused Products in the United States.  **Exhibit 83** includes a copy of the receipt for purchase in the United States of a representative product and **Exhibits 84 – 88** include a series of photographs of the product.  Labels on the product state that the product was "Designed by OnePlus" and "Made in China" and "Assembled in China." **Exhibits 84 – 86**.

### D.    TCL Respondents

112.    On information and belief, the TCL Respondents import, sell for importation, and/or sell within the United States after importation, the TCL Accused Products, including the representative TCL 10L, that infringe the Asserted Patents.

113.    The specific instances set forth below are representative examples of the TCL Respondents' unlawful importation, sale for importation, and/or sale within the United States after importation of infringing products.

114.    Prior to filing the Complaint, representatives for Complainants purchased the representative Accused Products in the United States.  **Exhibits 89** include a copy of the receipt for purchase in the United States of a representative product and **Exhibits 90 – 94** include a series

of photographs of the product.  Labels on the product state that the product was "Made in China." **Exhibit 90**.

### E.    Lenovo Respondents

115.    On information and belief, the Lenovo Respondents import, sell for importation, and/or sell within the United States after importation, the Lenovo Accused Products, including the representative Lenovo Motorola Edge (2021), that infringe the Asserted Patents.

116.    The specific instances set forth below are representative examples of the Lenovo Respondents' unlawful importation, sale for importation, and/or sale within the United States after importation of infringing products.

117.    Prior to filing the Complaint, representatives for Complainants purchased the representative Accused Products in the United States.  **Exhibit 95** includes a copy of the receipt for purchase in the United States of a representative product and **Exhibits 96 – 100** include a series of photographs of the product.  Labels on the product state that the product was "Made in China." **Exhibit 96**.

### F.    HMD Respondents

118.    On information and belief, HMD import, sell for importation, and/or sell within the United States after importation, HMD Accused Products, including the representative HMD Nokia G50, that infringe the Asserted Patents.

119.    The specific instances set forth below are representative examples of HMD' unlawful importation, sale for importation, and/or sale within the United States after importation of infringing products.

120.    Prior to filing the Complaint, representatives for Complainants purchased the representative Accused Products in the United States.  **Exhibit 101** includes a copy of the receipt for purchase in the United States of a representative product and **Exhibits 102 – 104** include a

series of photographs of the product.  Labels on the product state that the product was "Made in China." **Exhibit 102**.

G.    **Sony Respondents**

121.    On information and belief, Sony import, sell for importation, and/or sell within the United States after importation, the Sony Accused Products including the representative Sony Xperia 5 III, that infringe the Asserted Patents.

122.    The specific instances set forth below are representative examples of Sony' unlawful importation, sale for importation, and/or sale within the United States after importation of infringing products.

123.    Prior to filing the Complaint, representatives for Complainants purchased the representative Accused Products in the United States.  **Exhibit 105** includes a copy of the receipt for purchase in the United States of a representative product and **Exhibits 106 – 109** include a series of photographs of the product.  Labels on the product state "Manufacturer: Sony Corporation" and that the product was "Made in Thailand." **Exhibits 106 - 107**.

H.    **ASUS Respondents**

124.    On information and belief, ASUS imports, sells for importation, and/or sells within the United States after importation, the ASUS Accused Products, including the representative ASUS ZenFone 8, that infringe the Asserted Patents.

125.    The specific instances set forth below are representative examples of ASUS' unlawful importation, sale for importation, and/or sale within the United States after importation of infringing products.

126.    Prior to filing the Complaint, representatives for Complainants purchased the representative Accused Products in the United States.  **Exhibit 110** includes a copy of the receipt for purchase in the United States of a representative product and **Exhibits 111-113** include a series

of photographs of the product.  Labels on the product state that the product was "Made in China."

**Exhibit 111**.

### I.    Caterpillar

127.    On information and belief, Caterpillar imports, sells for importation, and/or sells within the United States after importation, the Caterpillar Accused Products, including the representative Caterpillar S62 Pro, that infringe the Asserted Patents.

128.    The specific instances set forth below are representative examples of Caterpillar's unlawful importation, sale for importation, and/or sale within the United States after importation of infringing products.

129.    Prior to filing the Complaint, representatives for Complainants purchased the representative Accused Products in the United States.  **Exhibit 114** includes a copy of the receipt for purchase in the United States of a representative product and **Exhibits 115 – 118** include a series of photographs of the product.  Labels on the product state that the product was made by Caterpillar and "Made in PRC."  **Exhibit 115**.

### J.    BLU

130.    On information and belief, BLU imports, sells for importation, and/or sells within the United States after importation, the BLU Accused Products, including the representative BLU Bold N2, that infringe the Asserted Patents.

131.    The specific instances set forth below are representative examples of BLU's unlawful importation, sale for importation, and/or sale within the United States after importation of infringing products.

132.    Prior to filing the Complaint, representatives for Complainants purchased the representative Accused Products in the United States.  **Exhibit 119** includes a copy of the receipt for purchase in the United States of a representative product and **Exhibits 120 – 121** include a

series of photographs of the product.  Labels on the product state that the product was made by BLU and manufactured in China. **Exhibit 120**.

### K.    Panasonic

133.    On information and belief, Panasonic imports, sells for importation, and/or sells within the United States after importation, the Panasonic Accused Products, including the representative Panasonic Toughbook FZ-N1, that infringe the Asserted Patents.

134.    The specific instances set forth below are representative examples of Panasonic's unlawful importation, sale for importation, and/or sale within the United States after importation of infringing products.

135.    Prior to filing the Complaint, representatives for Complainants purchased the representative Accused Products in the United States.  **Exhibit 122** includes a copy of the receipt for purchase in the United States of a representative product and **Exhibits 123 – 129** include a series of photographs of the product.  Labels on the product state that the product was made by Panasonic and "Made in Japan." **Exhibit 123**.

### L.    Kyocera

136.    On information and belief, Kyocera imports, sells for importation, and/or sells within the United States after importation, the Kyocera Accused Products, including the representative Kyocera Duraforce Pro, that infringe the Asserted Patents.

137.    The specific instances set forth below are representative examples of Kyocera's unlawful importation, sale for importation, and/or sale within the United States after importation of infringing products.

138.    Prior to filing the Complaint, representatives for Complainants purchased the representative Accused Products in the United States.  **Exhibit 130** includes a copy of the receipt for purchase in the United States of a representative product and **Exhibits 131 – 132** include a

series of photographs of the product.  Labels on the product state that the product was "Made in Japan." **Exhibit 131**.

      **M.**    **Xiaomi**

139.    On information and belief, Xiaomi imports, sells for importation, and/or sells within the United States after importation, the Xiaomi Accused Products, including the representative Xiaomi 11T, that infringe the Asserted Patents.

140.    The specific instances set forth below are representative examples of Xiaomi's unlawful importation, sale for importation, and/or sale within the United States after importation of infringing products.

141.    Prior to filing the Complaint, representatives for Complainants purchased the representative Accused Products in the United States.  **Exhibit 133** includes a copy of the receipt for purchase in the United States of a representative product and **Exhibits 134 - 135** include a series of photographs of the product.  Labels on the product state that the product was "Made in China." **Exhibit 134**.

## VI.    UNLAWFUL AND UNFAIR ACTS OF THE PROPOSED RESPONDENTS

142.    Complainants assert that Proposed Respondents infringe, literally and/or under the doctrine of equivalents, at least the following claims of the Asserted Patents, in violation of 35 U.S.C. §§ 271(a), (b), and (c).  Without discovery, Complainants cannot exhaustively identify all devices sold for importation into the United States, imported into the United States, and/or sold within the United States after importation that infringe the Asserted Patents.  Complainants reserve their right to supplement its allegations, to further amend this Complaint, and to add respondents and accused products in the future, if necessary, based on discovery received during the Investigation.

| Respondent | Patent No. | Claims |
|---|---|---|
| Google | '970 Patent | 2, 10-13 |
| Samsung Respondents | '970 Patent | 2, 10-13 |
| OnePlus | '970 Patent | 2, 10-13 |
| TCL Respondents | '970 Patent | 2, 10-13 |
| Lenovo Respondents | '970 Patent | 2, 10-13 |
| HMD Respondents | '970 Patent | 2, 10-13 |
| Sony Respondents | '970 Patent | 2, 10-13 |
| ASUS Respondents | '970 Patent | 2, 10-13 |
| Caterpillar | '970 Patent | 2, 10-13 |
| BLU | '970 Patent | 2, 10-13 |
| Panasonic | '970 Patent | 2, 10-13 |
| Kyocera | '970 Patent | 2, 10-13 |
| Xiaomi | '970 Patent | 2, 10-13 |
| Google | '838 Patent | 1, 3, 5-10, 16, 19, 25, 38, 40, 54-56, 61-64, 68, 71, 72, 80, 84 |
| Samsung Respondents | '838 Patent | 1, 3, 5-10, 16, 19, 25, 38, 40, 54-56, 61-64, 68, 71, 72, 80, 84 |
| OnePlus | '838 Patent | 1, 3, 5-10, 16, 19, 25, 38, 40, 54-56, 61-64, 68, 71, 72, 80, 84 |
| TCL Respondents | '838 Patent | 1, 3, 5-10, 16, 19, 25, 38, 40, 54-56, 61-64, 68, 71, 72, 80, 84 |
| Lenovo Respondents | '838 Patent | 1, 3, 5-10, 16, 19, 25, 38, 40, 54-56, 61-64, 68, 71, 72, 80, 84 |
| HMD Respondents | '838 Patent | 1, 3, 5-10, 16, 19, 25, 38, 40, 54-56, 61-64, 68, 71, 72, 80, 84 |
| Sony Respondents | '838 Patent | 1, 3, 5-10, 16, 19, 25, 38, 40, 54-56, 61-64, 68, 71, 72, 80, 84 |
| ASUS Respondents | '838 Patent | 1, 3, 5-10, 16, 19, 25, 38, 40, 54-56, 61-64, 68, 71, 72, 80, 84 |
| Caterpillar | '838 Patent | 1, 3, 5-10, 16, 19, 25, 38, 40, 54-56, 61-64, 68, 71, 72, 80, 84 |
| BLU | '838 Patent | 1, 3, 5-10, 16, 19, 25, 38, 40, 54-56, 61-64, 68, 71, 72, 80, 84 |
| Panasonic | '838 Patent | 1, 3, 5-10, 16, 19, 25, 38, 40, 54-56, 61-64, 68, 71, 72, 80, 84 |
| Kyocera | '838 Patent | 1, 3, 5-10, 16, 19, 25, 38, 40, 54-56, 61-64, 68, 71, 72, 80, 84 |
| Xiaomi | '838 Patent | 1, 3, 5-10, 16, 19, 25, 38, 40, 54-56, 61-64, 68, 71, 72, 80, 84 |
| Google | '251 Patent | 1, 2, 5, 7, 8, 23-25, 28-31, 35 |
| Samsung Respondents | '251 Patent | 1, 2, 5, 7, 8, 23-25, 28-31, 35 |

| Respondent | Patent No. | Claims |
|---|---|---|
| OnePlus | '251 Patent | 1, 2, 5, 7, 8, 23-25, 28-31, 35 |
| TCL Respondents | '251 Patent | 1, 2, 5, 7, 8, 23-25, 28-31, 35 |
| Lenovo Respondents | '251 Patent | 1, 2, 5, 7, 8, 23-25, 28-31, 35 |
| HMD Respondents | '251 Patent | 1, 2, 5, 7, 8, 23-25, 28-31, 35 |
| Sony Respondents | '251 Patent | 1, 2, 5, 7, 8, 23-25, 28-31, 35 |
| ASUS Respondents | '251 Patent | 1, 2, 5, 7, 8, 23-25, 28-31, 35 |
| Caterpillar | '251 Patent | 1, 2, 5, 7, 8, 23-25, 28-31, 35 |
| BLU | '251 Patent | 1, 2, 5, 7, 8, 23-25, 28-31, 35 |
| Panasonic | '251 Patent | 1, 2, 5, 7, 8, 23-25, 28-31, 35 |
| Kyocera | '251 Patent | 1, 2, 5, 7, 8, 23-25, 28-31, 35 |
| Xiaomi | '251 Patent | 1, 2, 5, 7, 8, 23-25, 28-31, 35 |
| Google | '829 Patent | 1, 8, 34, 35, 41, 68 |
| Samsung Respondents | '829 Patent | 1, 8, 34, 35, 41, 68 |
| OnePlus | '829 Patent | 1, 8, 34, 35, 41, 68 |
| TCL Respondents | '829 Patent | 1, 8, 34, 35, 41, 68 |
| Lenovo Respondents | '829 Patent | 1, 8, 34, 35, 41, 68 |
| HMD Respondents | '829 Patent | 1, 8, 34, 35, 41, 68 |
| Sony Respondents | '829 Patent | 1, 8, 34, 35, 41, 68 |
| ASUS Respondents | '829 Patent | 1, 8, 34, 35, 41, 68 |
| Caterpillar | '829 Patent | 1, 8, 34, 35, 41, 68 |
| BLU | '829 Patent | 1, 8, 34, 35, 41, 68 |
| Panasonic | '829 Patent | 1, 8, 34, 35, 41, 68 |
| Kyocera | '829 Patent | 1, 8, 34, 35, 41, 68 |
| Xiaomi | '829 Patent | 1, 8, 34, 35, 41, 68 |
| Google | '123 Patent | 14, 36, 37, 38 |
| Samsung Respondents | '123 Patent | 14, 36, 37, 38 |
| OnePlus | '123 Patent | 14, 36, 37, 38 |
| TCL Respondents | '123 Patent | 14, 36, 37, 38 |
| Lenovo Respondents | '123 Patent | 14, 36, 37, 38 |
| HMD Respondents | '123 Patent | 14, 36, 37, 38 |
| Sony Respondents | '123 Patent | 14, 36, 37, 38 |
| ASUS Respondents | '123 Patent | 14, 36, 37, 38 |
| Caterpillar | '123 Patent | 14, 36, 37, 38 |
| BLU | '123 Patent | 14, 36, 37, 38 |
| Panasonic | '123 Patent | 14, 36, 37, 38 |
| Kyocera | '123 Patent | 14, 36, 37, 38 |

| Respondent | Patent No. | Claims |
|:---:|:---:|:---:|
| Xiaomi | '123 Patent | 14, 36, 37, 38 |

A.    **Google**

143.    On information and belief, Google imports, sells for importation, and/or sells within the United States after importation Accused Products, such as the Google Pixel 6 smartphone, that directly infringe, literally and/or under the doctrine of equivalents, at least claims 2, 10-13 of the '970 Patent, claims 1, 3, 5-10, 16, 19, 25, 38, 40, 54-56, 61-64, 68, 71, 72, 80, and 84 of the '838 Patent, claims 1, 2, 5, 7, 8, 23-25, 28, 31, and 35 of the '251 Patent, claims 1, 8, 34, 35, 41, and 68 of the '829 Patent, and claims 14, 36, 37, and 38 of the '123 Patent (the "Asserted Claims") in violation of 35 U.S.C. § 271(a) and Section 337(a)(1)(B)(i). The Google Accused Products satisfy all claim limitations of the Asserted Claims at the time of importation into the United States.

144.    In addition to the Google Pixel 6, the Google Accused Products also include, but are not limited to, the following products: Nexus S, Galaxy Nexus, Nexus 4, Nexus 5, Nexus 6, Nexus 5X, Nexus 6P, Nexus 7 1st Gen., Nexus 7 2nd Gen., Nexus 10, Pixel 2, Pixel 2 XL, Pixel 3, Pixel 3 XL, Pixel 3a XL, Pixel 4, Pixel 4 XL, Pixel 4a, Pixel 4a (5G), Pixel 5, Pixel 5a, Pixel 6, Pixel 6 Pro, Pixel 6a, Pixel 7, Pixel 7 Pro, Pixel C, Chromebook Pixel, Google Pixelbook, Google Pixelbook Go, and Pixel Slate.

145.    Google also knowingly and intentionally induces infringement of the Asserted Claims in violation of 35 U.S.C. § 271(b) and Section 337(a)(1)(B)(ii).  Before the filing and service of this Complaint, and the filing and service of the related District Court complaint in the case captioned, *AGIS Software Dev. LLC v. Google LLC*, No. 2:19-cv-00361-JRG (E.D. Tex.), Google has had knowledge of the Asserted Patents and the infringing nature of the Google Accused Products, or has remained willfully blind to their infringement.  Google was informed by letter in

2008 by AGIS, Inc., and the infringing nature of the Google Accused Products. AGIS Software also previously served Google with a subpoena in a separate lawsuit in 2018. Despite this knowledge, Google continues to actively encourage and instruct its customers and end users (for example, through its marketing, user manuals, and online instruction materials on its website) to use the Google Accused Products in ways that directly infringe the Asserted Claims literally and/or under the doctrine of equivalents. Google does so knowing and intending that their customers and end users will commit these infringing acts. Google also continues to import, sell for importation, and/or sell in the United States the Google Accused Products, despite its knowledge of the Asserted Patents, thereby specifically intending for and inducing its customers to infringe the Asserted Patents through the customers' normal and customary use of the Google Accused Products.

146.    Google also contributorily infringes the Asserted Patents in violation of 35 U.S.C. § 271(c) by selling or offering to sell within the United States or importing into the United States mobile devices, computers, and components thereof that incorporate or constitute a material part of the inventions claimed by the Asserted Patents. Google incorporates location sharing and communication technology into the Google Accused Products and sells them with those components pre-installed. Google does so knowing that these components are especially made or especially adapted for uses that infringe the Asserted Patents, and not staple articles or commodities of commerce suitable for substantial non-infringing use.

147.    Google is not licensed to any of the Asserted AGIS Patents.

148.    Claim charts comparing the Asserted Claims of the Asserted Patents to a representative Google Accused Product, the Google Pixel 6, and including photographs and drawings where applicable, are attached as **Exhibits 6-10.**

### B.    Samsung Respondents

149.    On information and belief, Samsung imports, sells for importation, and/or sells within the United States after importation certain Accused Products (the "Samsung Accused Products"), such as the Samsung Galaxy S22+ smartphone, that directly infringe, literally and/or under the doctrine of equivalents, at least claims 2, 10-13 of the '970 Patent, claims 1, 3, 5-10, 16, 19, 25, 38, 40, 54-56, 61-64, 68, 71, 72, 80, and 84 of the '838 Patent, claims 1, 2, 5, 7, 8, 23-25, 28, 31, and 35 of the '251 Patent, claims 1, 8, 34, 35, 41, and 68 of the '829 Patent, and claims 14, 36, 37, and 38 of the '123 Patent (the "Asserted Claims") in violation of 35 U.S.C. § 271(a) and Section 337(a)(1)(B)(i). The Samsung Accused Products satisfy all claim limitations of the Asserted Claims at the time of importation into the United States.

150.    In addition to the Samsung Galaxy S22+, the Samsung Accused Products also include, but are not limited to the following products: Galaxy S20 Tactical Edition, Galaxy XCover FieldPro, Galaxy XCover Pro, GT-I7500 Galaxy, i5700 Galaxy Spica, Galaxy S, Galaxy SL, Galaxy S II, Galaxy S Advance, Galaxy S III, Galaxy S Duos, Galaxy S III Mini, Galaxy S II Plus, Galaxy S4, Galaxy S4 Active, Galaxy S4 Mini, Galaxy S4 Zoom, Galaxy S Duos 2, Galaxy S III Slim, Galaxy S5, Galaxy S III Neo, Galaxy S5 Active, Galaxy S5 Mini, Galaxy S Duos 3, Galaxy S5 Plus, Galaxy S6, Galaxy S6 Edge, Galaxy S5 Neo, Galaxy S6 Active, Galaxy S6 Edge+, Galaxy S7, Galaxy S7 Edge, Galaxy S7 Active, Galaxy S8, Galaxy S8+, Galaxy S8 Active, Galaxy S9, Galaxy S9+, Galaxy S10e, Galaxy S10, Galaxy S10+, Galaxy S10 5G, Galaxy S21, Galaxy S20 FE, Galaxy Alpha, Galaxy A3, Galaxy A5, Galaxy A7, Galaxy A8, Galaxy A3, Galaxy A5, Galaxy A7, Galaxy A8, Galaxy A8+, Galaxy A6, Galaxy A6+, Galaxy A8 Star, Galaxy A7, Galaxy A9, Galaxy A6s, Galaxy A8s, Galaxy A30, Galaxy A50, Galaxy A10, Galaxy A20, Galaxy A40, Galaxy A70, Galaxy A20e, Galaxy A80, Galaxy A40s, Galaxy A60, Galaxy A10s, Galaxy A20s, Galaxy A10e, Galaxy C5, Galaxy C7, Galaxy C9, Galaxy C9 Pro, Galaxy C7 Pro, Galaxy C5, Pro,

Galaxy C8, Galaxy J, Galaxy J1, Galaxy J5, Galaxy J7, Galaxy J2, Galaxy J1 Ace, Galaxy J1 Nxt, Galaxy J1 Mini, Galaxy J5 (2016), Galaxy J3 Pro, Galaxy J7, Galaxy J Max, Galaxy J1 Ace Neo, Galaxy J1 (2016), Galaxy J5 Prime, Galaxy J7, Prime, Galaxy J1 Mini Prime, Galaxy J2 Prime, Galaxy J3 Emerge, Galaxy J7 V, Galaxy J3 Prime, Galaxy J7 Pro, Galaxy J7 Max, Galaxy J7 Nxt, Galaxy J3 Luna Pro, Galaxy J7 Sky Pro, Galaxy J7+, Galaxy J2 Pro, Galaxy J7 Prime 2, Galaxy J7 Duo, Galaxy J4, Galaxy J6, Galaxy J3 (2018), Galaxy J7 (2018), Galaxy J2 Core, Galaxy J4+, Galaxy J6+, Galaxy J4 Core, Galaxy M, Galaxy M10, Galaxy M20, Galaxy M30, Galaxy M40, Galaxy E5, Galaxy E7, Galaxy Grand, Galaxy Core, Galaxy Core Plus, Galaxy Grand 2, Galaxy Grand Neo, Galaxy Core Prime, Galaxy Grand Prime Plus, Galaxy Grand Prime Pro, Galaxy Mega 5.8, Galaxy Mega 6.3, Galaxy Mega 2, Galaxy Mini, Galaxy Mini 2, Galaxy Trend, Galaxy Trend Lite, Galaxy Trend Plus, Galaxy Ace, Galaxy Ace Plus, Galaxy Ace 2, Galaxy Ace 3, Galaxy Ace Style, Galaxy Ace 4, Galaxy On7, Galaxy On5, Galaxy On5 Pro, Galaxy On7 Pro, Galaxy On8, Galaxy On Nxt, Galaxy On Max, Galaxy On7 Prime, Galaxy On6, Galaxy On8 (2018), Galaxy R, Galaxy R Style, Galaxy Y, Galaxy Y Duos, Galaxy Young, Galaxy Young 2, Galaxy Pocket, Galaxy Pocket Plus, Galaxy Pocket Neo, Galaxy Pocket Duos, Galaxy Pocket 2, Galaxy U, Galaxy Neo, Galaxy Pro, Galaxy Precedent, Galaxy Z, Galaxy Rush, Galaxy 5, Galaxy W, Galaxy Fit, Galaxy Gio, Galaxy Prevail, Galaxy Nexus, Galaxy Discover, Galaxy Reverb, Galaxy Stellar, Galaxy Appeal, Galaxy Express, Galaxy Express 2, Galaxy Fame, Galaxy Star, Galaxy Win, Galaxy Win Pro, Galaxy Star Pro, Galaxy Fame Lite, Galaxy Round, Galaxy Light, Galaxy V, Galaxy V Plus, Galaxy V2, Galaxy K Zoom, Galaxy Folder, Galaxy Active Neo, Galaxy Folder 2, Galaxy Fold, Galaxy Note, Galaxy Note II, Galaxy Note 3, Galaxy Note 4, Galaxy Note Edge, Galaxy Note 5, Galaxy Note 7, Galaxy Note Fan Edition, Galaxy Note 8, Galaxy Note 9, Galaxy Note 10, Galaxy Note 10+, Galaxy Note 10+ 5G, Galaxy Tab, Galaxy Tab 7.0, Galaxy Tab 10.1,

Galaxy Tab 10.1N, Galaxy Tab 10.1v, Galaxy Tab 8.9, Galaxy Tab 7.0 Plus, Galaxy Tab 7.7, Galaxy Tab 2 7.0, Galaxy Tab 2 10.1, Galaxy Tab 3 7.0, Galaxy Tab 3 Lite 7.0, Galaxy Tab 3 8.0, Galaxy Tab 3 10.1, Galaxy Tab 4 7.0, Galaxy Tab 4 8.0, Galaxy Tab 4 10.1, Galaxy Tab Pro 8.4, Galaxy Tab Pro 10.1, Galaxy Tab Pro 12.2, Galaxy Tab S 8.4, Galaxy Tab S 10.5, Galaxy Tab S2 8.0, Galaxy Tab S2 9.7, Galaxy Tab S3 9.7, Galaxy Tab S4 10.5, Galaxy Tab E 8, Galaxy Tab E 9.6, Galaxy Tab A 8.0, Galaxy Tab A 9.7, Galaxy Tab A 6.0, Galaxy Tab A 7.0, Galaxy Tab A 10.1, Galaxy Tab A 10.5, Galaxy Tab Pro S 12.0, Galaxy Book 10.6, Galaxy Book 12.0, Galaxy Tab Active, Galaxy Tab Active 2, Galaxy View, Galaxy Note 8.0, Galaxy Note 10, Galaxy Note 10.1, Galaxy Note Pro 12.2, Galaxy Gear, Gear Sport, Gear S3 Frontier, Galaxy Watch, Galaxy Watch Active, and Galaxy Watch Active 2.

151.    Samsung also knowingly and intentionally induces infringement of the Asserted Claims in violation of 35 U.S.C. § 271(b) and Section 337(a)(1)(B)(ii).  Before the filing and service of this Complaint, and the filing and service of the related District Court complaint in the case captioned, *AGIS Software Dev. LLC v. Samsung Elecs. Co., Ltd.*, No. 2:19-cv-00362-JRG (E.D. Tex.), Samsung has had knowledge of the Asserted Patents and the infringing nature of the Samsung Accused Products, or has remained willfully blind to their infringement.  Samsung engaged in correspondence with AGIS, Inc., and the infringing nature of the Samsung Accused Products.  Despite this knowledge, Samsung continues to actively encourage and instruct its customers and end users (for example, through its marketing, user manuals, and online instruction materials on its website) to use the Samsung Accused Products in ways that directly infringe the Asserted Claims literally and/or under the doctrine of equivalents.  Samsung does so knowing and intending that their customers and end users will commit these infringing acts.  Samsung also continues to import, sell for importation, and/or sell in the United States the Samsung Accused

Products, despite its knowledge of the Asserted Patents, thereby specifically intending for and inducing its customers to infringe the Asserted Patents through the customers' normal and customary use of the Samsung Accused Products.

152.    Samsung also contributorily infringes the Asserted Patents in violation of 35 U.S.C. § 271(c) by selling or offering to sell within the United States or importing into the United States mobile devices, computers, and components thereof that incorporate or constitute a material part of the inventions claimed by the Asserted Patents.  Samsung incorporates location sharing and communication technology into the Samsung Accused Products and sells them with those components pre-installed.  Samsung does so knowing that these components are especially made or especially adapted for uses that infringe the Asserted Patents, and not staple articles or commodities of commerce suitable for substantial non-infringing use.

153.    Samsung is not licensed to any of the Asserted AGIS Patents.

154.    Claim charts comparing the Asserted Claims of the Asserted Patents to a representative Samsung Accused Product, the Samsung Galaxy S22+, and including photographs and drawings where applicable, are attached as **Exhibit 11-15.**

### C.    OnePlus

155.    On information and belief, OnePlus imports, sells for importation, and/or sells within the United States after importation certain Accused Products (the "OnePlus Accused Products"), such as the OnePlus 8T smartphone, that directly infringe, literally and/or under the doctrine of equivalents, at least claims 2, 10-13 of the '970 Patent, claims 1, 3, 5-10, 16, 19, 25, 38, 40, 54-56, 61-64, 68, 71, 72, 80, and 84 of the '838 Patent, claims 1, 2, 5, 7, 8, 23-25, 28, 31, and 35 of the '251 Patent, claims 1, 8, 34, 35, 41, and 68 of the '829 Patent, and claims 14, 36, 37, and 38 of the '123 Patent (the "Asserted Claims") in violation of 35 U.S.C. § 271(a) and Section

337(a)(1)(B)(i). The OnePlus Accused Products satisfy all claim limitations of the Asserted Claims at the time of importation into the United States.

156.    In addition to the OnePlus 8T, the OnePlus Accused Products also include, but are not limited to, the following products: OnePlus 3, OnePlus 3T, OnePlus 5, OnePlus 5T, OnePlus 6, OnePlus 6T, OnePlus 7, OnePlus 7 Pro, OnePlus 7T, OnePlus 7T Pro, OnePlus 8, OnePlus 8 Pro, OnePlus 8T, OnePlus 9, OnePlus 9 Pro, OnePlus 10 Pro; and OnePlus 10T 5G.

157.    OnePlus also knowingly and intentionally induces infringement of one or more claims of the Asserted Patents in violation of 35 U.S.C. § 271(b) and Section 337(a)(1)(B)(ii). Through the filing and service of this Complaint.  OnePlus has had knowledge of the Asserted Patents and the infringing nature of the OnePlus Accused Products, or has remained willfully blind to their infringement.  Despite this knowledge, OnePlus continues to actively encourage and instruct its customers and end users (for example, through its marketing, user manuals, and online instruction materials on its website) to use the OnePlus Accused Products in ways that directly infringe the Asserted Claims literally and/or under the doctrine of equivalents.  OnePlus does so knowing and intending that their customers and end users will commit these infringing acts. OnePlus also continues to import, sell for importation, and/or sell in the United States the OnePlus Accused Products, despite their knowledge of the Asserted Patents, thereby specifically intending for and inducing its customers to infringe the Asserted Patents through the customers' normal and customary use of the OnePlus Accused Products.

158.    OnePlus also contributorily infringes the Asserted Patents in violation of 35 U.S.C. § 271(c) by selling or offering to sell within the United States or importing into the United States mobile devices, computers, and components thereof that incorporate or constitute a material part of the inventions claimed by the Asserted Patents.  OnePlus incorporates location sharing and

communication technology into the OnePlus Accused Products and sells them with those components pre-installed. OnePlus does so knowing that these components are especially made or especially adapted for uses that infringe the Asserted Patents, and not staple articles or commodities of commerce suitable for substantial non-infringing use.

159.    OnePlus is not licensed to any of the Asserted AGIS Patents.

160.    A claim chart comparing the Asserted Claims of the Asserted Patents to a representative OnePlus Accused Product, the OnePlus 8T, and including photographs and drawings where applicable, is attached as **Exhibits 16-20.**

    **D.    TCL**

161.    On information and belief, TCL imports, sells for importation, and/or sells within the United States after importation certain Accused Products (the "TCL Accused Products"), such as the TCL 10L smartphone, that directly infringe, literally and/or under the doctrine of equivalents, at least claims 2, 10-13 of the '970 Patent, claims 1, 3, 5-10, 16, 19, 25, 38, 40, 54-56, 61-64, 68, 71, 72, 80, and 84 of the '838 Patent, claims 1, 2, 5, 7, 8, 23-25, 28, 31, and 35 of the '251 Patent, claims 1, 8, 34, 35, 41, and 68 of the '829 Patent, and claims 14, 36, 37, and 38 of the '123 Patent (the "Asserted Claims") in violation of 35 U.S.C. § 271(a) and Section 337(a)(1)(B)(i). The TCL Accused Products satisfy all claim limitations of the Asserted Claims at the time of importation into the United States.

162.    In addition to the TCL 10L, the TCL Accused Products also include, but are not limited to, the following products: TCL 950, TCL 580, TCL 562, TCL 750, TCL 560, TCL Y660, TCL Plex, TCL 10 TABMID Wi-Fi, TCL 10 TABMID 4G, TCL 10 TABMAX Wi-Fi, TCL 10 TABMAX 4G, TCL 10 SE, TCL 10 Plus, TCL 10 5G, TCL 10L, TCL 10 Pro, TCL20B, TCL TAB Pro, TCL 20 R 5G, TCL L10 Pro, TCL 20Y, TCL 20S, TCL 20 Pro 5G, TCL 20L+, TCL 20L, TCL 20 SE, TCL 20 5G, TCL NXTPAPER, TCL Tab 10s, TCL 30+, TCL Stylus 5G, TCL

30 LE, TCL 30 Z, TCL Tab 8 4G, TCL NXTPAPER 10s, TCL Tab 10L, TCL 30 5G, TCL 30, TCL 30 XE 5G, TCL 30E, TCL 30 SE, TCL 305, TCL 30 V 5G, TCL 10 SE, TCL 10L, TCL 10 Pro, TCL 10 Plus, TCL 10 5G, Joy Tab 2, Joy Tab Kids, Lumos, Axel, Apprise, Glimpse, 3V, Insight, Avalon V, Onyx, IdealXTRA, Tetra, 1L Pro, 1, 3X Plus, 1S, 1L, 3L, 1V Plus, 5X, 1V, 3X, 3L, 3, 1S, 1c, 1x, 5V, 5, 3V, 3C, A7 XL, A7, Idol 5, Idol 5S, U5 HD, Idol 4 Pro, A30 Plus, Idol 5S, A50, Flash, U5, A5 LED, A3, A3 XL, Idol 4S (Windows 10), Pixi 4 Plus Power, Pixi 4, XL, Shine Lite, X1, Pop Star, Pop 4S, Pop 4+, Pop 4, Plus 10, OneTouch Fierce XL, OneTouch Pixi 4, Pixi 4, Flash 2, OneTouch Pixi First, OneTouch Idol 3C, OneTouch Go Play, OneTouch Pop Up, OneTouch Pop Star LTE, OneTouch Pop Star, OneTouch Pop Astro, OneTouch Hero 2+, OneTouch Idol 3, Orange Klif, OneTouch Pixi 3, OneTouch Pop 2, OneTouch Hero 2C, OneTouch Hero 2, One Touch Flash, OneTouch 20.05, OneTouch Tribe 3040, OneTouch Idol X+, OneTouch Pop S9, OneTouch Pop S7, OneTouch Pop S3, OneTouch Fire S, OneTouch Fire E, OneTouch Fire C, OneTouch Pop Fit, OneTouch Idol 2 Mini, OneTouch Idol 2, OneTouch POP C9, Pop S LTE, 3T 8", and 3T 10.

163.    TCL also knowingly and intentionally induces infringement of one or more claims of the Asserted Patents in violation of 35 U.S.C. § 271(b) and Section 337(a)(1)(B)(ii).  Through the filing and service of this Complaint.  TCL has had knowledge of the Asserted Patents and the infringing nature of the TCL Accused Products, or has remained willfully blind to their infringement.  Despite this knowledge, TCL continues to actively encourage and instruct its customers and end users (for example, through its marketing, user manuals, and online instruction materials on its website) to use the TCL Accused Products in ways that directly infringe the Asserted Claims literally and/or under the doctrine of equivalents.  TCL does so knowing and intending that their customers and end users will commit these infringing acts.  TCL also continues

to import, sell for importation, and/or sell in the United States the TCL Accused Products, despite their knowledge of the Asserted Patents, thereby specifically intending for and inducing its customers to infringe the Asserted Patents through the customers' normal and customary use of the TCL Accused Products.

164.    TCL also contributorily infringes the Asserted Patents in violation of 35 U.S.C. § 271(c) by selling or offering to sell within the United States or importing into the United States mobile devices, computers, and components thereof that incorporate or constitute a material part of the inventions claimed by the Asserted Patents.    TCL incorporates location sharing and communication technology into the TCL Accused Products and sells them with those components pre-installed.    TCL does so knowing that these components are especially made or especially adapted for uses that infringe the Asserted Patents, and not staple articles or commodities of commerce suitable for substantial non-infringing use.

165.    TCL is not licensed to any of the Asserted AGIS Patents.

166.    Claim charts comparing the Asserted Claims of the Asserted Patents to a representative TCL Accused Product, the TCL 10L, and including photographs and drawings where applicable, are attached as **Exhibit 21-25.**

### E.    Lenovo

167.    On information and belief, Lenovo imports, sells for importation, and/or sells within the United States after importation certain Accused Products (the "Lenovo Accused Products"), such as the Lenovo Motorola Edge (2021) smartphone, that directly infringe, literally and/or under the doctrine of equivalents, at least claims 2, 10-13 of the '970 Patent, claims 1, 3, 5-10, 16, 19, 25, 38, 40, 54-56, 61-64, 68, 71, 72, 80, and 84 of the '838 Patent, claims 1, 2, 5, 7, 8, 23-25, 28, 31, and 35 of the '251 Patent, claims 1, 8, 34, 35, 41, and 68 of the '829 Patent, and claims 14, 36, 37, and 38 of the '123 Patent (the "Asserted Claims") in violation of 35 U.S.C.

§ 271(a) and Section 337(a)(1)(B)(i). The Lenovo Accused Products satisfy all claim limitations of the Asserted Claims at the time of importation into the United States.

168.    In addition to the Lenovo Motorola Edge (2021), the Lenovo Accused Products also include, but are not limited to, the following products: Vibe K5, Vibe K5 Plus, Tab3 7, Tab M8 HD, Tab3 8, Tab3 10, Tab P11, Tab P11 Plus, Tab P11 Tablet, Tab M10 HD, Tab P12 Pro, Yoga Tab 13 Tablet, Lenovo Tab K10 LTE, Tab M10 FHD Plus (2nd Gen.), Yoga Tab 11, Smart Tab M10 Plus (2nd Gen.), Tab M10 HD (2nd Gen.), Smart Tab M10 FHD Gen. 2, Tab M8 HD LTE 8 inch, Tab P11 Pro Tablet, PHAB2 Pro, Moto Z, Phab2 Pro, Moto Z Droid Edition, Tab 4, Moto G5, Moto G5 Plus, Tab 4 8, Tab 4 10, Tab 4 8 Plus, Tab 4 10 Plus, Tab E7, Tab E8, Tab E9, Tab E10, Tab M10, Tab P10, Tab V7, Tab P12 Pro, Legion Y700, Tab M10 Plus (3rd Gen.), 10w Tablet, ThinkPad X12 Detachable, ThinkPad X1 Fold, Chromebook Duet, Yoga Smart Tab, ThinkPad X1 Tablet (3rd Gen.), IdeaPad Miix 310, IdeaPad Miix 700, and Tab 2 A8.

169.    Lenovo also knowingly and intentionally induces infringement of one or more claims of the Asserted Patents in violation of 35 U.S.C. § 271(b) and Section 337(a)(1)(B)(ii). Through the filing and service of this Complaint.  Lenovo has had knowledge of the Asserted Patents and the infringing nature of the Lenovo Accused Products, or has remained willfully blind to their infringement.  Despite this knowledge, Lenovo continues to actively encourage and instruct its customers and end users (for example, through its marketing, user manuals, and online instruction materials on its website) to use the Lenovo Accused Products in ways that directly infringe the Asserted Claims literally and/or under the doctrine of equivalents.  Lenovo does so knowing and intending that their customers and end users will commit these infringing acts. Lenovo also continues to import, sell for importation, and/or sell in the United States the Lenovo Accused Products, despite their knowledge of the Asserted Patents, thereby specifically intending

for and inducing its customers to infringe the Asserted Patents through the customers' normal and customary use of the Lenovo Accused Products.

170.    Lenovo also contributorily infringes the Asserted Patents in violation of 35 U.S.C. § 271(c) by selling or offering to sell within the United States or importing into the United States mobile devices, computers, and components thereof that incorporate or constitute a material part of the inventions claimed by the Asserted Patents.  Lenovo incorporates location sharing and communication technology into the Lenovo Accused Products and sells them with those components pre-installed.  Lenovo does so knowing that these components are especially made or especially adapted for uses that infringe the Asserted Patents, and not staple articles or commodities of commerce suitable for substantial non-infringing use.

171.    Lenovo is not licensed to any of the Asserted AGIS Patents.

172.    Claim charts comparing the Asserted Claims of the Asserted Patents to a representative Lenovo Accused Product, the Lenovo Motorola Edge (2021), and including photographs and drawings where applicable, are attached as **Exhibits 26-30.**

**F.    HMD**

173.    On information and belief, HMD imports, sells for importation, and/or sells within the United States after importation certain Accused Products (the "HMD Accused Products"), such as the HMD G50 smartphone, that directly infringe, literally and/or under the doctrine of equivalents, at least claims 2, 10-13 of the '970 Patent, claims 1, 3, 5-10, 16, 19, 25, 38, 40, 54-56, 61-64, 68, 71, 72, 80, and 84 of the '838 Patent, claims 1, 2, 5, 7, 8, 23-25, 28, 31, and 35 of the '251 Patent, claims 1, 8, 34, 35, 41, and 68 of the '829 Patent, and claims 14, 36, 37, and 38 of the '123 Patent (the "Asserted Claims") in violation of 35 U.S.C. § 271(a) and Section 337(a)(1)(B)(i). The HMD Accused Products satisfy all claim limitations of the Asserted Claims at the time of importation into the United States.

174.    In addition to the HMD G50, the HMD Accused Products also include, but are not limited to, the following products: Nokia 3, Nokia 5, Nokia 6, Nokia 7, Nokia 8, Nokia 9, Nokia 6.1 Plus, Nokia 7 Plus, Nokia 7.1 Plus, Nokia 7.1, Nokia 5.1 Plus, Nokia 3.1 Plus, Nokia 8 Sirocco, Nokia 3.1, Nokia 5.1, Nokia 9 PureView, Nokia C21 Plus, Nokia C21, Nokia C2 2nd Edition, Nokia G11, Nokia G21, Nokia X100, Nokia G300, Nokia T20, Nokia C100, Nokia C200, Nokia XR20, Nokia C30, Nokia C1 2nd Edition, Nokia C20 Plus, Nokia C01 Plus, Nokia X20, Nokia X10, Nokia G20, Nokia G21, Nokia G10, Nokia C20, Nokia C10, Nokia 1.4, Nokia 5.4, Nokia C1 Plus, Nokia 3.4, Nokia 2.4, Nokia C3, Nokia C5 Endi, Nokia C2 Tennen, Nokia C2 Tava, Nokia X100 5G, Nokia G300 5G, Nokia G50, Nokia G20, Nokia G10, Nokia 8 V 5G UW, Nokia 2V Tella, Nokia T20, Nokia X50, Nokia 10, Nokia 8.3 5G, Nokia GR20 5G, Nokia G50, Nokia G11, and Nokia G21.

175.    HMD also knowingly and intentionally induces infringement of one or more claims of the Asserted Patents in violation of 35 U.S.C. § 271(b) and Section 337(a)(1)(B)(ii).  Through the filing and service of this Complaint.  HMD has had knowledge of the Asserted Patents and the infringing nature of the HMD Accused Products, or has remained willfully blind to their infringement.  Despite this knowledge, HMD continues to actively encourage and instruct its customers and end users (for example, through its marketing, user manuals, and online instruction materials on its website) to use the HMD Accused Products in ways that directly infringe the Asserted Claims literally and/or under the doctrine of equivalents.  HMD does so knowing and intending that their customers and end users will commit these infringing acts.  HMD also continues to import, sell for importation, and/or sell in the United States the HMD Accused Products, despite their knowledge of the Asserted Patents, thereby specifically intending for and

inducing its customers to infringe the Asserted Patents through the customers' normal and customary use of the HMD Accused Products.

176.    HMD also contributorily infringes the Asserted Patents in violation of 35 U.S.C. § 271(c) by selling or offering to sell within the United States or importing into the United States mobile devices, computers, and components thereof that incorporate or constitute a material part of the inventions claimed by the Asserted Patents.    HMD incorporates location sharing and communication technology into the HMD Accused Products and sells them with those components pre-installed.    HMD does so knowing that these components are especially made or especially adapted for uses that infringe the Asserted Patents, and not staple articles or commodities of commerce suitable for substantial non-infringing use.

177.    HMD is not licensed to any of the Asserted AGIS Patents.

178.    Claim charts comparing the Asserted Claims of the Asserted Patents to a representative HMD Accused Product, the HMD G50, and including photographs and drawings where applicable, are attached as **Exhibits 31-35.**

### G.    Sony

179.    On information and belief, Sony imports, sells for importation, and/or sells within the United States after importation certain Accused Products (the "Sony Accused Products"), such as the Sony Xperia 5 III smartphone, that directly infringe, literally and/or under the doctrine of equivalents, at least claims 2, 10-13 of the '970 Patent, claims 1, 3, 5-10, 16, 19, 25, 38, 40, 54-56, 61-64, 68, 71, 72, 80, and 84 of the '838 Patent, claims 1, 2, 5, 7, 8, 23-25, 28, 31, and 35 of the '251 Patent, claims 1, 8, 34, 35, 41, and 68 of the '829 Patent, and claims 14, 36, 37, and 38 of the '123 Patent (the "Asserted Claims") in violation of 35 U.S.C. § 271(a) and Section 337(a)(1)(B)(i). The Sony Accused Products satisfy all claim limitations of the Asserted Claims at the time of importation into the United States.

180.    In addition to the Sony Xperia 5 III, the Sony Accused Products also include, but are not limited to, the following products: Xperia Z4 Tablet, Xperia Z4 Tablet LTE, Xperia Tablet Z, Xperia Z3 Tablet Compact, Xperia Z3 Tablet Compact LTE 4G, Xperia Tablet S, Xperia Z2 Tablet, Xperia Z2 Tablet 3G, Xperia Z2 Tablet, Xperia Tablet Z, Tablet S 3G, Xperia 1 IV, Xperia PRO-I, Xperia 5 III, Xperia 1 III, Xperia PRO, Xperia 10, Xperia 5, Xperia 10 II, Xperia 1, Xperia XZ3, Xperia XA2, Xperia 1 II, Xperia 5 II, Xperia XZ2 Compact, Xperia L4, Xperia XZ1 Compact, Xperia XA2 Ultra, Xperia 10 Plus, Xperia XZ2, Xperia Z3, Xperia 10 IV, Xperia 10 III Lite, Xperia 10 III, Xperia L3, Xperia XA2 Plus, Xperia XZ2 Premium, Xperia L2, Xperia R1 (Plus), Xperia XZ1, Xperia XA1 Plus, Xperia XZ1 Compact, and Xperia L1.

181.    Sony also knowingly and intentionally induces infringement of one or more claims of the Asserted Patents in violation of 35 U.S.C. § 271(b) and Section 337(a)(1)(B)(ii).  Through the filing and service of this Complaint.  Sony has had knowledge of the Asserted Patents and the infringing nature of the Sony Accused Products, or has remained willfully blind to their infringement.  Despite this knowledge, Sony continues to actively encourage and instruct its customers and end users (for example, through its marketing, user manuals, and online instruction materials on its website) to use the Sony Accused Products in ways that directly infringe the Asserted Claims literally and/or under the doctrine of equivalents.  Sony does so knowing and intending that their customers and end users will commit these infringing acts.  Sony also continues to import, sell for importation, and/or sell in the United States the Sony Accused Products, despite their knowledge of the Asserted Patents, thereby specifically intending for and inducing its customers to infringe the Asserted Patents through the customers' normal and customary use of the Sony Accused Products.

182.    Sony also contributorily infringes the Asserted Patents in violation of 35 U.S.C. § 271(c) by selling or offering to sell within the United States or importing into the United States mobile devices, computers, and components thereof that incorporate or constitute a material part of the inventions claimed by the Asserted Patents.  Sony incorporates location sharing and communication technology into the Sony Accused Products and sell them with those components pre-installed.  Sony does so knowing that these components are especially made or especially adapted for uses that infringe the Asserted Patents, and not staple articles or commodities of commerce suitable for substantial non-infringing use.

183.    Sony is not licensed to any of the Asserted AGIS Patents.

184.    Claim charts comparing the Asserted Claims of the Asserted Patents to a representative Sony Accused Product, the Sony Xperia 5 III, and including photographs and drawings where applicable, are attached as **Exhibits 36-40.**

## H.    ASUS

185.    On information and belief, ASUS imports, sells for importation, and/or sells within the United States after importation certain Accused Products (the "ASUS Accused Products"), such as the ASUS ZenFone 8 smartphone, that directly infringe, literally and/or under the doctrine of equivalents, at least claims 2, 10-13 of the '970 Patent, claims 1, 3, 5-10, 16, 19, 25, 38, 40, 54-56, 61-64, 68, 71, 72, 80, and 84 of the '838 Patent, claims 1, 2, 5, 7, 8, 23-25, 28, 31, and 35 of the '251 Patent, claims 1, 8, 34, 35, 41, and 68 of the '829 Patent, and claims 14, 36, 37, and 38 of the '123 Patent (the "Asserted Claims") in violation of 35 U.S.C. § 271(a) and Section 337(a)(1)(B)(i). The ASUS Accused Products satisfy all claim limitations of the Asserted Claims at the time of importation into the United States.

186.    In addition to the ASUS ZenFone 8, the ASUS Accused Products also include, but are not limited to, the following products: ZenFone 3, ZenFone 3 Max, ZenFone 3 Deluxe,

ZenFone 3 Laser, ZenFone 3 Ultra, ZenFone 3s Max, ZenFone 3 Zoom, ZenFone AR, ZenFone Go, ZenFone 4 Max, ZenFone Live, ZenFone 4 Max Pro, ZenFone 4 Max Plus,  ZenFone 4 Max Plus (M1), ZenFone 4, ZenFone 4 Pro, ZenFone 4 Selfie, ZenFone 3 Zoom, ZenFone 4 Selfie Pro, ZenFone 4 Max, ZenFone AR, ZenFone V, ZenFone 4 Max Plus, ZenFone 4 Selfie Lite, ZenFone 3s Max, ZenFone 4 Selfie, ZenFone Pegasus 3s, ZenFone 5Z, ZenFone 5, ZenFone 5 Max, ZenFone Max Pro M2, ZenFone Max M2, ZenFone 4 Pro, ZenFone 5 Lite, ZenFone Max Pro M2, ZenFone Max M2, ZenFone Live L1, ZenFone 6, ZenFone 7, ZenFone 7 Pro, ZenFone 8, ZenFone 8 Mini, ZenFone 8 Flip, ZenFone 8 Pro, ZenFone 8 Compact, ZenFone 11, ROG Phone, ROG Phone 2, ROG Phone 3, ROG Phone 3 Strix, ROG Phone 4, ROG Phone 5, ROG Phone 5s, ROG Phone 5s Pro, ROG Phone 5 Ultimate, ROG Phone Pro 5G

187.    ASUS also knowingly and intentionally induces infringement of one or more claims of the Asserted Patents in violation of 35 U.S.C. § 271(b) and Section 337(a)(1)(B)(ii). Through the filing and service of this Complaint.  ASUS has had knowledge of the Asserted Patents and the infringing nature of the ASUS Accused Products, or has remained willfully blind to their infringement.  Despite this knowledge, ASUS continues to actively encourage and instruct its customers and end users (for example, through its marketing, user manuals, and online instruction materials on its website) to use the ASUS Accused Products in ways that directly infringe the Asserted Claims literally and/or under the doctrine of equivalents.  ASUS does so knowing and intending that their customers and end users will commit these infringing acts.  ASUS also continues to import, sell for importation, and/or sell in the United States the ASUS Accused Products, despite their knowledge of the Asserted Patents, thereby specifically intending for and inducing its customers to infringe the Asserted Patents through the customers' normal and customary use of the ASUS Accused Products.

188.    ASUS also contributorily infringes the Asserted Patents in violation of 35 U.S.C. § 271(c) by selling or offering to sell within the United States or importing into the United States mobile devices, computers, and components thereof that incorporate or constitute a material part of the inventions claimed by the Asserted Patents.    ASUS incorporates location sharing and communication technology into the ASUS Accused Products and sells them with those components pre-installed.    ASUS does so knowing that these components are especially made or especially adapted for uses that infringe the Asserted Patents, and not staple articles or commodities of commerce suitable for substantial non-infringing use.

189.    ASUS is not licensed to any of the Asserted AGIS Patents.

190.    Claim charts comparing the Asserted Claims of the Asserted Patents to a representative ASUS Accused Product, the ASUS ZenFone 8, and including photographs and drawings where applicable, are attached as **Exhibits 41-45.**

## I.    Caterpillar

191.    On information and belief, Caterpillar imports, sells for importation, and/or sells within the United States after importation certain Accused Products (the "Caterpillar Accused Products"), such as the Caterpillar S62 Pro smartphone, that directly infringe, literally and/or under the doctrine of equivalents, at least claims 2, 10-13 of the '970 Patent, claims 1, 3, 5-10, 16, 19, 25, 38, 40, 54-56, 61-64, 68, 71, 72, 80, and 84 of the '838 Patent, claims 1, 2, 5, 7, 8, 23-25, 28, 31, and 35 of the '251 Patent, claims 1, 8, 34, 35, 41, and 68 of the '829 Patent, and claims 14, 36, 37, and 38 of the '123 Patent (the "Asserted Claims") in violation of 35 U.S.C. § 271(a) and Section 337(a)(1)(B)(i). The Caterpillar Accused Products satisfy all claim limitations of the Asserted Claims at the time of importation into the United States.

192.    In addition to the Caterpillar S62 Pro, the Caterpillar Accused Products also include, but are not limited to the following products: Cat S53, Cat Q10 5G, Cat B26, Cat B40,

Cat S42/Cat 42 H+, Cag S62 Pro, Cat S62, Cat S62 4G, Cat S60, Cag S48c, Cat S41, Cat S31, Cat S30, Cat S52, and Cat S61.

193.    Caterpillar also knowingly and intentionally induces infringement of one or more claims of the Asserted Patents in violation of 35 U.S.C. § 271(b) and Section 337(a)(1)(B)(ii). Through the filing and service of this Complaint. Caterpillar has had knowledge of the Asserted Patents and the infringing nature of the Caterpillar Accused Products, or has remained willfully blind to their infringement. Despite this knowledge, Caterpillar continues to actively encourage and instruct its customers and end users (for example, through its marketing, user manuals, and online instruction materials on its website) to use the Caterpillar Accused Products in ways that directly infringe the Asserted Claims literally and/or under the doctrine of equivalents. Caterpillar does so knowing and intending that their customers and end users will commit these infringing acts. Caterpillar also continues to import, sell for importation, and/or sell in the United States the Caterpillar Accused Products, despite their knowledge of the Asserted Patents, thereby specifically intending for and inducing its customers to infringe the Asserted Patents through the customers' normal and customary use of the Caterpillar Accused Products.

194.    Caterpillar also contributorily infringes the Asserted Patents in violation of 35 U.S.C. § 271(c) by selling or offering to sell within the United States or importing into the United States mobile devices, computers, and components thereof that incorporate or constitute a material part of the inventions claimed by the Asserted Patents. Caterpillar incorporates location sharing and communication technology into the Caterpillar Accused Products and sells them with those components pre-installed. Caterpillar does so knowing that these components are especially made or especially adapted for uses that infringe the Asserted Patents, and not staple articles or commodities of commerce suitable for substantial non-infringing use.

195.    Caterpillar is not licensed to any of the Asserted AGIS Patents.

196.    A claim chart comparing the Asserted Claims of the Asserted Patents to a representative Caterpillar Accused Product, the Caterpillar S62 Pro, and including photographs and drawings where applicable, is attached as **Exhibits 46-50.**

**J.    BLU**

197.    On information and belief, BLU imports, sells for importation, and/or sells within the United States after importation certain Accused Products (the "BLU Accused Products"), such as the BLU Bold N2 smartphone, that directly infringe, literally and/or under the doctrine of equivalents, at least claims 2, 10-13 of the '970 Patent, claims 1, 3, 5-10, 16, 19, 25, 38, 40, 54-56, 61-64, 68, 71, 72, 80, and 84 of the '838 Patent, claims 1, 2, 5, 7, 8, 23-25, 28, 31, and 35 of the '251 Patent, claims 1, 8, 34, 35, 41, and 68 of the '829 Patent, and claims 14, 36, 37, and 38 of the '123 Patent (the "Asserted Claims") in violation of 35 U.S.C. § 271(a) and Section 337(a)(1)(B)(i). The BLU Accused Products satisfy all claim limitations of the Asserted Claims at the time of importation into the United States.

198.    In addition to the BLU Bold N2, the BLU Accused Products also include, but are not limited to, the following products: F91 5G, C5 Max, C5L Max, C7, C6L 2020, C6 2020, C5L 2020, C5L, C5 2019, C5 Plus, C6L, C6 2019, G40, G51, G61S, G50 Mega 2022, G91 Max, G71L, G71+, G51S, G91S, G91 PRO, G51 Plus, G91, G71, G61, G50 Mega, G90 Pro, G9 Pro, G90, G80, G50 Plus, G50, G60, G70, G5, G5 Plus, G6, G8, G9, J9L, J7L, J6 2020, J5L, J2, J4, J6, Studio X10 2022, Studio X10L, Studio X12, Studio X10+, Studio X10, Studio X9 HD, Vivo X1, Vivo X1+, Vivo X5, Vivo XL5, View 3, View Mega, View 2, View 1, R1 HD, Life One X, Advance 4.0 L2, Advance 4.0 M, Dash 4.5, Dash G, Dash L2, Dash M2, Dash X Plus LTE, Dash X2, Dash XL, Diamond M, Energy Diamond, Energy Diamond Mini, Energy JR, Energy M, Energy X 2, Energy X Plus, Energy XL, Grand 5.5 HD, Life Mark, Life Max, Life One X2, Neo

X, Neo X LTE, Neo X Mini, Neo X Plus, Neo XL, Pure XR, Studio C 8+8, Studio C 8+8 LTE, Studio C HD, Studio G HD, Studio G HD LTE, Studio G Max, Studio G Plus HD, Studio G2, Studio G2 HD, Studio J5, Studio M HD, Studio M LTE, Studio Max, Studio One, Studio One Plus, Studio Selfie 2, Studio Touch, Studio X Mini, Studio X8 HD, Studio XL2, Vivo 5, Vivo 5R, Vivo 6, Vivo XL, Advance 4.0 L3, C5 LTE, Dash L3, Dash L4, Dash L4 LTE, Dash L5 LTE, Grand 5.5 HD II, Grand Energy, Grand M2, Grand M2 LTE, Grand Max, Grand Mini, Grand X, Grand X LTE, Grand XL, Grand XL LTE, Life One X2 Mini, Life One X3, R1 Plus, R2, R2 LTE, R2 Plus, S1, Studio G Mini, Studio G3, Studio J1, Studio J2, Studio J8, Studio J8 LTE, Studio Mega, Studio Pro, Studio Selfie LTE, Tank Xtreme 4.0, Tank Xtreme 5.0, Tank Xtreme Pro, Vivo 5 Mini, Vivo 8, Vivo XL2, Advance L5, Bold N1, C5 2019, C5 Plus, C5L, C6 2019, C6L, G5, G5 Plus, G6, G8, G9, G9 Pro, J2, J4, J6, Studio Mega 2019, Studio Mini, Studio X8 HD, View 1, Vivo X5, Vivo XL5, X5, XL5, C5L 2020, C6 2020, C6L 2020, G50 Mega, G50 Plus, G80, G90, G90 Pro, J6 2020, F91, G50 Mega 2022, ASL, and View 3.

199.    BLU also knowingly and intentionally induces infringement of one or more claims of the Asserted Patents in violation of 35 U.S.C. § 271(b) and Section 337(a)(1)(B)(ii).  Through the filing and service of this Complaint.  BLU has had knowledge of the Asserted Patents and the infringing nature of the BLU Accused Products, or has remained willfully blind to their infringement.  Despite this knowledge, BLU continues to actively encourage and instruct its customers and end users (for example, through its marketing, user manuals, and online instruction materials on its website) to use the BLU Accused Products in ways that directly infringe the Asserted Claims literally and/or under the doctrine of equivalents.  BLU does so knowing and intending that their customers and end users will commit these infringing acts.  BLU also continues to import, sell for importation, and/or sell in the United States the BLU Accused Products, despite

their knowledge of the Asserted Patents, thereby specifically intending for and inducing its customers to infringe the Asserted Patents through the customers' normal and customary use of the BLU Accused Products.

200.    BLU also contributorily infringes the Asserted Patents in violation of 35 U.S.C. § 271(c) by selling or offering to sell within the United States or importing into the United States mobile devices, computers, and components thereof that incorporate or constitute a material part of the inventions claimed by the Asserted Patents.  BLU incorporates location sharing and communication technology into the BLU Accused Products and sells them with those components pre-installed.  BLU does so knowing that these components are especially made or especially adapted for uses that infringe the Asserted Patents, and not staple articles or commodities of commerce suitable for substantial non-infringing use.

201.    BLU is not licensed to any of the Asserted AGIS Patents.

202.    Claim charts comparing the Asserted Claims of the Asserted Patents to a representative BLU Accused Product, the BLU Bold N2, and including photographs and drawings where applicable, are attached as **Exhibits 51-55.**

### K.    Panasonic

203.    On information and belief, Panasonic imports, sells for importation, and/or sells within the United States after importation certain Accused Products (the "BLU Accused Products"), such as the Panasonic Toughbook FZ-N1, that directly infringe, literally and/or under the doctrine of equivalents, at least claims 2, 10-13 of the '970 Patent, claims 1, 3, 5-10, 16, 19, 25, 38, 40, 54-56, 61-64, 68, 71, 72, 80, and 84 of the '838 Patent, claims 1, 2, 5, 7, 8, 23-25, 28, 31, and 35 of the '251 Patent, claims 1, 8, 34, 35, 41, and 68 of the '829 Patent, and claims 14, 36, 37, and 38 of the '123 Patent (the "Asserted Claims") in violation of 35 U.S.C. § 271(a) and Section

337(a)(1)(B)(i). The Panasonic Accused Products satisfy all claim limitations of the Asserted Claims at the time of importation into the United States.

204.    In addition to the Panasonic Toughbook FZ-N1, the Panasonic Accused Products also include, but are not limited to, the following products: Toughbook G2, Toughbook 33, Toughbook CF-33LE, Toughbook G1, Toughbook FZ-Q1, Toughbook S1, Toughbook A3, Toughbook N1, Toughbook FZ-N1.

205.    Panasonic also knowingly and intentionally induces infringement of one or more claims of the Asserted Patents in violation of 35 U.S.C. § 271(b) and Section 337(a)(1)(B)(ii). Through the filing and service of this Complaint.  Panasonic has had knowledge of the Asserted Patents and the infringing nature of the Panasonic Accused Products, or has remained willfully blind to their infringement.  Despite this knowledge, Panasonic continues to actively encourage and instruct its customers and end users (for example, through its marketing, user manuals, and online instruction materials on its website) to use the Panasonic Accused Products in ways that directly infringe the Asserted Claims literally and/or under the doctrine of equivalents.  Panasonic does so knowing and intending that their customers and end users will commit these infringing acts.  Panasonic also continues to import, sell for importation, and/or sell in the United States the Panasonic Accused Products, despite their knowledge of the Asserted Patents, thereby specifically intending for and inducing its customers to infringe the Asserted Patents through the customers' normal and customary use of the Panasonic Accused Products.

206.    Panasonic also contributorily infringes the Asserted Patents in violation of 35 U.S.C. § 271(c) by selling or offering to sell within the United States or importing into the United States mobile devices, computers, and components thereof that incorporate or constitute a material part of the inventions claimed by the Asserted Patents.  Panasonic incorporates location sharing

and communication technology into the Panasonic Accused Products and sells them with those components pre-installed. Panasonic does so knowing that these components are especially made or especially adapted for uses that infringe the Asserted Patents, and not staple articles or commodities of commerce suitable for substantial non-infringing use.

207. Panasonic is not licensed to any of the Asserted AGIS Patents.

208. A claim chart comparing the Asserted Claims of the Asserted Patents to a representative Panasonic Accused Product, the Panasonic Toughbook FZ-N1, and including photographs and drawings where applicable, is attached as **Exhibits 56-60.**

**L.    Kyocera**

209. On information and belief, Kyocera imports, sells for importation, and/or sells within the United States after importation certain Accused Products (the "Kyocera Accused Products"), such as the Kyocera Durasport Pro smartphone, that directly infringe, literally and/or under the doctrine of equivalents, at least claims 2, 10-13 of the '970 Patent, claims 1, 3, 5-10, 16, 19, 25, 38, 40, 54-56, 61-64, 68, 71, 72, 80, and 84 of the '838 Patent, claims 1, 2, 5, 7, 8, 23-25, 28, 31, and 35 of the '251 Patent, claims 1, 8, 34, 35, 41, and 68 of the '829 Patent, and claims 14, 36, 37, and 38 of the '123 Patent (the "Asserted Claims") in violation of 35 U.S.C. § 271(a) and Section 337(a)(1)(B)(i). The Kyocera Accused Products satisfy all claim limitations of the Asserted Claims at the time of importation into the United States.

210. In addition to the Kyocera Durasport Pro, the Kyocera Accused Products also include, but are not limited to, the following products: DuraSlate Wifi Tablet, DuraSport 5G, DuraForce Ultra 5G, DuraForce PRO 2, DuraForce PRO 2, DuraForce PRO 2.

211. Kyocera also knowingly and intentionally induces infringement of one or more claims of the Asserted Patents in violation of 35 U.S.C. § 271(b) and Section 337(a)(1)(B)(ii). Through the filing and service of this Complaint. Kyocera has had knowledge of the Asserted

Patents and the infringing nature of the Kyocera Accused Products, or has remained willfully blind to their infringement.  Despite this knowledge, Kyocera continues to actively encourage and instruct its customers and end users (for example, through its marketing, user manuals, and online instruction materials on its website) to use the Kyocera Accused Products in ways that directly infringe the Asserted Claims literally and/or under the doctrine of equivalents.  Kyocera does so knowing and intending that their customers and end users will commit these infringing acts. Kyocera also continues to import, sell for importation, and/or sell in the United States the Kyocera Accused Products, despite their knowledge of the Asserted Patents, thereby specifically intending for and inducing its customers to infringe the Asserted Patents through the customers' normal and customary use of the Kyocera Accused Products.

212.    Kyocera also contributorily infringes the Asserted Patents in violation of 35 U.S.C. § 271(c) by selling or offering to sell within the United States or importing into the United States mobile devices, computers, and components thereof that incorporate or constitute a material part of the inventions claimed by the Asserted Patents.  Kyocera incorporates location sharing and communication technology into the Kyocera Accused Products and sells them with those components pre-installed.  Kyocera does so knowing that these components are especially made or especially adapted for uses that infringe the Asserted Patents, and not staple articles or commodities of commerce suitable for substantial non-infringing use.

213.    Kyocera is not licensed to any of the Asserted AGIS Patents.

214.    Claim charts comparing the Asserted Claims of the Asserted Patents to a representative Kyocera Accused Product, the Kyocera Durasport Pro, and including photographs and drawings where applicable, are attached as **Exhibits 61-65.**

**M.     Xiaomi**

215.    On information and belief, Xiaomi imports, sells for importation, and/or sells within the United States after importation certain Accused Products (the "Xiaomi Accused Products"), such as the Xiaomi 11T smartphone, that directly infringe, literally and/or under the doctrine of equivalents, at least claims 2, 10-13 of the '970 Patent, claims 1, 3, 5-10, 16, 19, 25, 38, 40, 54-56, 61-64, 68, 71, 72, 80, and 84 of the '838 Patent, claims 1, 2, 5, 7, 8, 23-25, 28, 31, and 35 of the '251 Patent, claims 1, 8, 34, 35, 41, and 68 of the '829 Patent, and claims 14, 36, 37, and 38 of the '123 Patent (the "Asserted Claims") in violation of 35 U.S.C. § 271(a) and Section 337(a)(1)(B)(i). The Xiaomi Accused Products satisfy all claim limitations of the Asserted Claims at the time of importation into the United States.

216.    In addition to the Xiaomi 11T, the Xiaomi Accused Products also include, but are not limited to, the following products: Xiaomi 12, Redmi Note 11S 5G, Redmi Note 10, Redmi Note 11, Redmi 9A, Xiaomi 11T 5G, Redmi 10C, Xiaomi Mi 8, Xiaomi Mi Max 3, Redmi 9C, Xiaomi Poco M4 Pro, Redmi Note 10 Pro, 11Ultra, Note 7, Xiaomi Mi 11T Pro, Xiaomi Mi 11 Ultra Mi 11 5G, Redmi 6A, Redmi Note 11 Pro, Redmi 9C, Redmi 9AT, Mia2 Lite, Xiaomi 12X, Note 9 Pro, Note 11 Pro+, Xiaomi Mi 9T, Mix Fold 2, Redmi K40.

217.    Xiaomi also knowingly and intentionally induces infringement of one or more claims of the Asserted Patents in violation of 35 U.S.C. § 271(b) and Section 337(a)(1)(B)(ii). Through the filing and service of this Complaint.  Xiaomi has had knowledge of the Asserted Patents and the infringing nature of the Xiaomi Accused Products, or has remained willfully blind to their infringement.  Despite this knowledge, Xiaomi continues to actively encourage and instruct its customers and end users (for example, through its marketing, user manuals, and online instruction materials on its website) to use the Xiaomi Accused Products in ways that directly infringe the Asserted Claims literally and/or under the doctrine of equivalents.  Xiaomi does so

knowing and intending that their customers and end users will commit these infringing acts. Xiaomi also continues to import, sell for importation, and/or sell in the United States the Xiaomi Accused Products, despite their knowledge of the Asserted Patents, thereby specifically intending for and inducing its customers to infringe the Asserted Patents through the customers' normal and customary use of the Xiaomi Accused Products.

218.    Xiaomi also contributorily infringes the Asserted Patents in violation of 35 U.S.C. § 271(c) by selling or offering to sell within the United States or importing into the United States mobile devices, computers, and components thereof that incorporate or constitute a material part of the inventions claimed by the Asserted Patents.  Xiaomi location sharing and communication technology into the Xiaomi Accused Products and sell them with those components pre-installed. Xiaomi does so knowing that these components are especially made or especially adapted for uses that infringe the Asserted Patents, and not staple articles or commodities of commerce suitable for substantial non-infringing use.

219.    Xiaomi is not licensed to any of the Asserted AGIS Patents.

220.    Claim charts comparing the Asserted Claims of the Asserted Patents to a representative Xiaomi Accused Product, the Xiaomi 11T, and including photographs and drawings where applicable, are attached as **Exhibits 66-70.**

## VII.    CLASSIFICATION OF THE ACCUSED PRODUCTS UNDER THE HARMONIZED TARIFF SCHEDULE

221.    On information and belief, the Accused Products are classified under at least the following subheadings of the Harmonized Tariff Schedule of the United States: 8517.12.00, 8517.62.00, and 8517.70.00 (smartphones); and 8471.30.01, 8471.41.01, 8471.49.00, or 8471.50.01 (tablets, handheld computers, and laptop computers).  These classifications are

exemplary in nature and not intended to restrict the scope of any exclusion order or other remedy ordered by the Commission.

## VIII.  RELATED LITIGATION

222.  Complainant AGIS Software Development LLC filed complaints in the United States District Court against Proposed Respondents Google LLC, Samsung Electronics Co., Ltd., and Samsung Electronics America, Inc., and against Waze Mobile Limited, alleging infringement of one or more claims of the '970, '838, '251, '829, and '123 Patents, the same patents that have been asserted in this Complaint.  The following related cases, which may share some of the same or similar subject matter as this Complaint, were filed in the United States District Court for the Eastern District of Texas: *AGIS Software Dev. LLC v. Google LLC*, No. 2:19-cv-00361-JRG (E.D. Tex.); *AGIS Software Dev. LLC v. Samsung Elecs. Co., Ltd.*, No. 2:19-cv-00362-JRG (E.D. Tex.); *AGIS Software Dev. LLC v. Waze Mobile Limited*, No. 2:19-cv-00359-JRG (E.D. Tex.).

223.  The cases against Google Inc., Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Waze Mobile Limited involved allegations of infringement of one or more claims of the '970, '838, '251, and '829 Patents, in addition to U.S. Patent No. 9,408,055 (the "'055 Patent").  The cases progressed through claim construction, fact and expert discovery, dispositive motions, and pretrial disclosures before they were transferred to the Northern District of California following a petition for writ of mandamus, which was granted by the Federal Circuit. *See AGIS Software Dev. LLC v. Google LLC*, No. 2:19-cv-00361-JRG, Dkt. 388 (E.D. Tex. May 24, 2022).  The district court issued a claim construction order on October 10, 2018, construing claims of the Asserted Patents.  *See AGIS Software Dev. LLC v. Google LLC*, No. 2:19-cv-00361-JRG, Dkt. 147 (E.D. Tex. Dec. 8, 2020).

224.  Complainant AGIS Software LLC also previously filed the following cases, which may share some of the same or similar subject matter as this Complaint in the United States District

Court for the Eastern District of Texas: *AGIS Software Dev. LLC v. Huawei Device USA Inc.*, No. 2:17-cv-513-JRG (E.D. Tex.); *AGIS Software Dev. LLC v. HTC Corp.*, No. 2:17-cv-514-JRG (E.D. Tex.); *AGIS Software Dev. LLC v. LG Elecs., Inc.*, No. 2:17-cv-515-JRG (E.D. Tex.); *AGIS Software Dev. LLC v. Apple Inc.*, No. 2:17-cv-516-JRG (E.D. Tex.); *AGIS Software Dev. LLC v. ZTE Corp.*, No. 2:17-cv-517-JRG (E.D. Tex.); *ZTE (USA), Inc. v. AGIS Software Dev. LLC*, No. 3:18-cv-06185 (N.D. Cal.); *AGIS Software Dev. LLC v. Waze Mobile Limited*, No. 2:19-cv-00359-JRG (E.D. Tex.); *AGIS Software Dev. LLC v. T-Mobile USA, Inc.*, No. 2:21-cv-00072-JRG (E.D. Tex.); *AGIS Software Dev. LLC v. WhatsApp, Inc.*, No. 2:21-cv-00029-JRG (E.D. Tex.).

225.    The cases against Apple Inc., HTC Corporation, LG Electronics, Inc., Huawei Device USA Inc., Huawei Technologies USA Inc., Huawei Technologies Co., Ltd., ZTE Corporation, and ZTE (TX), Inc. involved allegations of infringement of one or more claims of the '970, '838, '251, and '829 Patents, in addition to the '055 Patent. The cases progressed through claim construction, fact and expert discovery, dispositive motions, and pretrial disclosures before they were resolved prior to the pretrial conference. The district court issued a claim construction order on October 10, 2018, construing claims of the Asserted Patents. *See AGIS Software Dev. LLC v. Huawei Device USA, Inc., et al.*, No. 2:17-cv-00513-JRG, Dkt. 205 (E.D. Tex. Oct. 10, 2018).

226.    The cases against Uber Technologies, Inc. d/b/a Uber, Lyft Inc., T-Mobile USA, Inc., T-Mobile US, Inc., and WhatsApp, Inc. involved allegations of infringement of one or more claims of the '251, '838, and '829 Patents, in addition to the '055 Patent and U.S. Patent Nos. 7,031,728 and 7,630,724. The case against WhatsApp, Inc. was resolved prior to the claim construction hearing. The case against T-Mobile USA, Inc. and T-Mobile US, Inc. was resolved shortly after the claim construction hearing. The district court issued a claim construction order

on November 10, 2021, construing claims of the Asserted Patents. *See AGIS Software Dev. LLC v. T-Mobile USA, Inc., et al.*, No. 2:21-cv-00072-JRG, Dkt. 213 (E.D. Tex. Nov. 10, 2021).

227.    WhatsApp LLC, Smith Micro Software, Inc., Smith Micro Software LLC, and Lyft, Inc. filed complaints for declaratory judgment against Complainants AGIS Software Development LLC and/or AGIS Inc.

228.    The case against Lyft, Inc. in the United States District Court for the Eastern District of Texas was dismissed following the adoption of the Magistrate Judge's Report and Recommendation granting Lyft Inc.'s motion to dismiss.  *See AGIS Software Dev. LLC v. T-Mobile USA, Inc., et al.*, No. 2:21-cv-00072-JRG, Dkt. 212 (E.D. Tex. Nov. 10, 2021); *AGIS Software Dev. LLC v. T-Mobile USA Inc., et al.*, No. 2:21-cv-00072-JRG, Dkt. 334 (E.D. Tex. Jan. 29, 2022).

229.    Complainant AGIS Software Development LLC filed complaints in the United States District Court against Proposed Respondents Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc., and against Verizon Communications Inc., Cellco Partnership, d/b/a Verizon Wireless, Verizon Enterprise Solutions, LLC, Verizon Business Global LLC, Verizon Business Network Services, LLC, and Terremark North America LLC, involving infringement of one or more claims of the '970, '838, '829, and '123 Patents. *AGIS Software Dev. LLC v. Samsung Electronics Co., Ltd., et al.*, No. 2:22-cv-00263-JRG (E.D. Tex.); *AGIS Software Dev. LLC v. Verizon Communications Inc.*, No. 2:22-cv-00185-JRG (E.D. Tex.). The cases are currently pending in the United States District Court for the Eastern District of Texas.

230.    Other than the litigation specified above, to Complainants' knowledge, the alleged unfair methods of competition and unfair acts, or the subject matter thereof, are not the subject of any other court or agency litigation.

## IX.    THE DOMESTIC INDUSTRY

231.    In accordance with Section 337(a)(2) and (a)(3), a domestic industry exists in the United States in connection with each of the Asserted Patents comprising quantitatively and qualitatively significant investments in the United States in (1) plant and equipment, (2) employment of labor and capital related to products that practice the Asserted Patents; and (3) substantial investments in engineering and research and development of the Asserted Patent and products that practice the Asserted Patents.

232.    Complainant AGIS, Inc., makes significant and substantial investments in plant and equipment, labor and capital, and engineering and research and development with respect to products that practice one or more claims of the Asserted Patents, including its LifeRing products (the "LifeRing DI Products"). By virtue of a license granted by Complainant, AGIS, Inc. is fully licensed to practice the Asserted Patents.  *See* **Confidential Exhibits 142C-143C**.  Within the United States, AGIS, Inc. designs, develops, engineers, sells, and supports the LifeRing DI Products that use technology claimed by the Asserted Patents.

### A.    Technical Prong

233.    The LifeRing DI Products practice at least the following claims of the Asserted Patents:

| Asserted Patent | Exemplary Practiced Claims | Exemplary Domestic Industry Products |
|---|---|---|
| 8,213,970 | 2, 10 | AGIS, Inc. LifeRing Product |
| 9,467,838 | 1, 24 | AGIS, Inc. LifeRing Product |
| 9,445,251 | 1, 34, 35, 68 | AGIS, Inc. LifeRing Product |
| 9,749,829 | 1, 35, 68 | AGIS, Inc. LifeRing Product |
| 9,820,123 | 1, 14, 23, 36 | AGIS, Inc. LifeRing Product |

234.    **Confidential Exhibits 137C-141C** are claim charts demonstrating how the LifeRing DI Products practice these claims of the Asserted Patents.

235.    An exemplary claim chart showing how the LifeRing DI Products practice exemplary claims of the '970 Patent is attached as **Confidential Exhibit 137C**.

236.    An exemplary claim chart showing how the LifeRing DI Products practice exemplary claims of the '838 Patent is attached as **Confidential Exhibit 138C**.

237.    An exemplary claim chart showing how the LifeRing DI Products practice exemplary claims of the '251 Patent is attached as **Confidential Exhibit 139C**.

238.    An exemplary claim chart showing how the LifeRing DI Products practice exemplary claims of the '829 Patent is attached as **Confidential Exhibit 140C**.

239.    An exemplary claim chart showing how the LifeRing DI Products practice exemplary claims of the '123 Patent is attached as **Confidential Exhibit 141C**.

**B.    Economic Prong**

240.    AGIS, Inc. has in the United States, with respect to the LifeRing DI Products, significant investments in plant and equipment, significant employment of labor and capital, and substantial investments in exploitation of the Asserted Patents.

241.    AGIS, Inc. was founded in 2004 and maintains places of business in Jupiter, Florida; Marshall, Texas; and Waco, Texas.  From these locations, AGIS, Inc. conducts research and development, design, and engineering of its LifeRing DI Products.

242.    Over the years, AGIS, Inc. has invested—and continues to invest—millions of dollars in the United States in labor and capital, plant and equipment, and research and development relating to the LifeRing DI Products.  Details relating to AGIS, Inc.'s domestic expenditures on labor and capital, plant and equipment, and research and development are set forth in **Confidential Exhibit 144C,** Declaration of Malcom K. Beyer in Support of the Complaint.

243.    AGIS, Inc.'s domestic investments and activities are significant and substantial both in absolute terms and relative to AGIS, Inc.'s overall operations.  AGIS, Inc.'s investments and activities are imported to the LifeRing DI Products and represent significant domestic added value, particularly where the protected articles are designed, developed, engineered and tested in the United States and AGIS Inc. has no foreign investments.

## X.    RELIEF REQUESTED

244.    Proposed Respondents have infringed and will continue to infringe the Asserted Patent as specified in Sections VI and VII above unless the Commission prohibits the importation and sale within the United States after importation of the Accused Products.

245.    Accordingly, Complainants respectfully requests that the United States International Trade Commission:

(a) institute an immediate investigation pursuant to Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337, into Proposed Respondents' violations of Section 337 arising from the sale for importation into the United States, importation, and/or sale within the United States after importation of certain location-sharing systems, related software, components thereof, and products containing same;

(b) schedule and conduct a hearing, pursuant to 19 U.S.C. § 1337(c), for purposes of receiving evidence and hearing argument concerning whether Proposed Respondents have violated Section 337 and, following the hearing, find that Proposed Respondents have violated Section 337;

(c) issue a permanent limited exclusion order, pursuant to 19 U.S.C. § 1337(d)(1), excluding from entry into the United States certain location-sharing systems, related software, components thereof, and products containing same by the

Proposed Respondents or any of their affiliate companies, parents, subsidiaries, licensees, or other related business entities, or their successors or assigns that infringe, literally and/or under the doctrine of equivalents, one or more claims of the Asserted Patent, including, without limitation, the Accused Products identified in this Complaint and the exhibits hereto;

(d) issue permanent orders, pursuant to 19 U.S.C. § 1337(f), directing Proposed Respondents and any of their principals, stockholders, officers, directors, employees, agents, distributors, controlled (whether by stock ownership or otherwise) and majority-owned business entities, successors, and assigns to cease and desist from importing, selling, offering for sale, marketing, advertising, demonstrating, packaging, warehousing inventory for distribution, distributing, licensing, transfer, soliciting of any sale, or using in the United States certain location-sharing systems, related software, components thereof, and products containing same that infringe, literally and/or under the doctrine of equivalents, one or more claims of the Asserted Patent, including, without limitation, the Accused Products identified in this Complaint and the exhibits hereto;

(e) impose a bond, pursuant to 19 U.S.C. § 1337(j), on Proposed Respondents importation of location-sharing systems, related software, components thereof, and products containing same that infringe any claim of the Asserted Patents to protect Complaint from further injury during the 60-day Presidential review period; and

(f)  grant all such other and further relief as is appropriate under the law, based

upon the facts complained of herein and as determined by the investigation.

Dated: November 16, 2022

Respectfully submitted,

Evan H. Langdon
**FABRICANT LLP**
1101 Pennsylvania Avenue, Suite 300
Washington, DC 20004
Telephone: (646) 797-4277
E-mail: Agis_ITC@fabricantllp.com

Alfred R. Fabricant
Peter Lambrianakos
Vincent J. Rubino, III
Enrique W. Iturralde
Justine Minseon Park
**FABRICANT LLP**
411 Theodore Fremd Avenue, Suite 206
South Rye, New York 10580
Telephone: (646) 797-4277
E-mail: Agis_ITC@fabricantllp.com

Matthew D. Aichele
**RUSS AUGUST & KABAT**
800 Maine Ave. SW, Suite 200
Washington, DC 20024
Telephone: (202) 664-0623
E-mail: maichele@raklaw.com

*Counsel for Complainants AGIS Software*
*Development LLC and Advanced Ground*
*Information Systems, Inc.*

## UNITED STATES INTERNATIONAL TRADE COMMISSION
## WASHINGTON, D.C.

**In the Matter of:**

**CERTAIN LOCATION-SHARING SYSTEMS, RELATED SOFTWARE, COMPONENTS THEREOF, AND PRODUCTS CONTAINING SAME**

**Investigation No. 337-TA-____**

## VERIFICATION TO COMPLAINT

I, Malcolm K. Beyer, Jr., declare, in accordance with 19 C.F.R. §§ 210.4 and 210.12(a) as follows:

1.   I am Chief Executive Officer of Advanced Ground Information Systems, Inc. and AGIS Software Development LLC and am duly authorized to sign this Complaint;

2.   I have read the Complaint and I am aware of its contents;

3.   The Complaint is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

4.   To the best of my knowledge, information, and belief founded upon reasonable inquiry, the claims and legal contentions of the Complaint are warranted by existing law or a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; and

5.   The allegations and other factual contentions made in the Complaint have evidentiary support or are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 15, 2022 in
Jupiter, Florida

Malcolm K. Beyer, Jr.
Chief Executive Officer
Advanced Ground Information Systems, Inc.
and AGIS Software Development LLC

1